*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ROGER MILLER MUSIC, INC.; MARY A.
MILLER,

              *Plaintiffs-Appellees,*

        *v.*

SONY/ATV PUBLISHING, LLC,

              *Defendant-Appellant.*

No. 10-5363

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-01132—William J. Haynes, Jr., District Judge.

Argued: October 12, 2011

Decided and Filed: February 22, 2012

Before: MOORE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Barry I. Slotnick, LOEB & LOEB LLP, New York, New York, for
Appellant. John J. Griffin, Jr., KAY GRIFFIN ENKEMA & COLBERT, PLLC,
Nashville, Tennessee, for Appellees. **ON BRIEF:** Barry I. Slotnick, Jonathan N.
Strauss, Shelly Elimelekh, LOEB & LOEB LLP, New York, New York, Robert L.
Sullivan, LOEB & LOEB LLP, Nashville, Tennessee, for Appellant. John J. Griffin, Jr.,
KAY GRIFFIN ENKEMA & COLBERT, PLLC, Nashville, Tennessee, for Appellees.

_____

[*]The Honorable Joseph Hood, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.  Defendant-Appellant Sony/ATV Publishing, LLC ("Sony") appeals the district court's judgment in favor of Plaintiffs-Appellees Mary Miller and Roger Miller Music, Inc. (collectively, "RMMI") on their copyright infringement claim and the award of $903,349.17 in damages.  Because the Copyright Act makes clear that the renewal copyright vested with Roger Miller, and thus with Sony as his assignee, we REVERSE the district court's judgment and REMAND with instructions to enter judgment in favor of Sony.

## I.  BACKGROUND

Famed singer and songwriter Roger Miller, best known for the hit song "King of the Road," assigned the original and renewal copyrights to his songs to Tree Publishing Co. (Sony's predecessor-in-interest) in a series of contracts in the 1960s.  In exchange for this assignment, Miller was entitled to receive royalty payments from the use of his songs.  Relevant to this litigation are the songs originally copyrighted in 1964, for which the renewal copyright term began January 1, 1993.[1]

Sony filed applications to register the renewal copyrights for the 1964 songs with the United States Copyright Office in January and April 1992 and subsequently registered these copyrights.  Miller died on October 25, 1992.  In his will, he granted all interests in his intellectual property to his wife, Mary; Mary Miller assigned these interests to Roger Miller Music, Inc.  Over the next twelve years, Sony continued to exploit the 1964 songs and pay royalties to RMMI.

---

[1]The 1964 songs include "King of the Road."  Miller's other songs from that year are "Chug-A-Lug," "Dang Me," "Feel of Me," "Got Two Again," "Less and Less," "Squares Make the World Go Round," "Dern Ya," "Chinese Dang Me," "Do Wacka Do," "Meadowgreen," "It Happened Just That Way," "Australian Sheepherder," "Hard-Headed Me," "Love Is Not For Me," "Reincarnation," "Train of Love," "You Can't Roller Skate In A Buffalo Herd," "As Long As There's A Shadow," "I'll Be Somewhere," "Our Hearts Will Play the Music," "That's The Way It's Always Been," "There I Go Dreamin' Again," and "The Willow Weep."

In December 2004, RMMI brought suit against Sony for copyright infringement, seeking damages and a declaration that RMMI was the owner of the renewal copyrights to the songs Miller composed between 1958 and 1964. At this stage in the litigation, Sony did not contend that it owned the renewal copyrights to the 1964 songs or dispute RMMI's contention that ownership vested in RMMI due to Miller's death prior to the start of the renewal term. The district court granted Sony's motion for judgment on the pleadings, holding that Sony owned the renewal copyrights to the 1958-1963 songs and that it held an implied, non-exclusive license to exploit the 1964 songs based on RMMI's actions and inactions in accepting royalty payments without objection. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, No. 04-1132, 2005 WL 5351103, at *1 (M.D. Tenn. July 11, 2005) (*RMMI I*). Sony subsequently filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that it owned the renewal copyrights to the 1964 songs because it had applied to register them prior to Miller's death. The district court treated Sony's previous position regarding the 1964 songs as a binding judicial admission and refused to hear Sony's arguments on the issue.

Both parties appealed, and a previous panel of this court affirmed as to Sony's ownership of the copyrights to the 1958-1963 songs, but reversed the holding that Sony's previous statements regarding the 1964 songs constituted judicial admissions. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 391-95 (6th Cir. 2007) (*RMMI II*). We remanded for a determination of whether the district court should hear arguments on ownership of the renewal copyrights to the 1964 songs.

On remand, the district court concluded that Sony did not own the renewal copyrights, because Roger Miller had died prior to the vesting of the renewal rights and assignees were not included in the list of statutory successors, and the court thus denied Sony's Rule 59(e) motion. The court incorporated its previous decision that Sony held an implied license to exploit the 1964 songs, but nonetheless appointed a Special Master to conduct an accounting of the infringement damages owed to RMMI. Sony objected to the Special Master's report on the grounds that Sony's status as a licensee precluded any liability for infringement. In response, the district court reversed its prior holding

on the license issue and awarded RMMI $903,349.17 in damages. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, No. 04-1132, 2010 WL 1026980, at *3 (M.D. Tenn. Mar. 18, 2010) (*RMMI III*).[2] Sony timely appealed, arguing that it owned the renewal copyrights to the 1964 songs and, alternatively, that the district court's sua sponte reversal of its previous holding on the license issue was both procedurally impermissible and substantively incorrect.

## II. ANALYSIS

### A. Standard of Review

"'A matter requiring statutory interpretation is a question of law,'" which we review de novo. *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011) (quoting *United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011)).

### B. Copyright Infringement

This case presents an interstitial issue of copyright law. Miller's assignment of the renewal copyright would indisputably have been made effective if he had still been living at the commencement of the renewal term on January 1, 1993. Equally indisputable is that the assignment would have been rendered ineffective if Miller had died before 1992. This case is before us because Miller was still living at the time in 1992 that his assignee applied to register the copyright, but Miller died before the start of the renewal term. RMMI contends that Miller must have been living at the start of the renewal term to effectuate his assignment to Sony, but Sony counters that Miller needed to survive only until the time at which the application was filed. Sony is correct that the Copyright Act supports the effectiveness of assignments in such circumstances.

---

[2]The amount of infringement damages makes clear that, unlike Miller's musical persona, the owner of these copyrights would hardly be a "man of means by no means."

### 1.  The Renewal Copyright

Under the Copyright Act, an artistic work has an original copyright term of twenty-eight years followed by a renewal term of an additional sixty-seven years. 17 U.S.C. §§ 304(a)(1)(A), (a)(2)(B).[3]  A renewal copyright can be registered with the U.S. Copyright Office at any point in the final year of the original term (the "renewal year"), *id.* § 304(a)(3)(A)(i), or at any time within the renewal term itself, *id.* § 304(a)(3)(A)(ii); without registration, the copyright renews automatically at the start of the renewal term, *id.* § 304(a)(3)(B).[4]

The Copyright Act provides that, if an application to register the renewal copyright is filed within the renewal year, the renewal copyright "shall vest, upon the beginning of such further term, in any person who is entitled under paragraph (1)(C) to the renewal and extension of the copyright at the time the application is made." *Id.* § 304(a)(2)(B)(i).  If no application is filed, the renewal copyright "shall vest, upon the beginning of such further term, in any person entitled under paragraph (1)(C), as of the last day of the original term of copyright, to the renewal and extension of the copyright." *Id.* § 304(a)(2)(B)(ii).

Paragraph (1)(C) establishes a hierarchy of who is entitled to the renewal copyright:

> (i) the author of such work, if the author is still living,
> (ii) the widow, widower, or children of the author, if the author is not living,

---

[3] The provisions of the Copyright Act discussed herein apply to works originally copyrighted between January 1, 1964 and December 31, 1977, and thus to the 1964 songs at issue in this case.  These provisions were enacted as part of the Copyright Renewal Act of 1992.

[4] Prior to 1992, failure to register a renewal copyright prior to the start of the renewal term resulted in the work's entering the public domain.  *See* Pub. L. No. 94-553, § 304(a), 90 Stat. 2541 (1976) (amended 1992) ("[I]n default of the registration of such application for renewal and extension, the copyright in any work shall terminate at the expiration of twenty-eight years from the date copyright was originally secured.").  Although the 1992 Act provided for automatic renewal, it also contained a variety of incentives for voluntary registration during the renewal year.  *See* H.R. Rep. No. 102-379(I), at 11-14 (1991), *reprinted in* 1992 U.S.C.C.A.N. 166, 171-74 ("Title I automatically renews all subsisting copyrights but, at the same time, provides a strong inducement to register.").

(iii) the author's executors, if such author, widow, widower, or children are not living, or

(iv) the author's next of kin, in the absence of a will of the author.

*Id.* § 304(a)(1)(C).

The original and renewal copyrights are distinct legal interests. An author who sells the original copyright to his work thus has a second chance to claim ownership at the end of the original term. This system protects an author who was in a weak bargaining position at the outset but whose work ultimately proved successful. *Stewart v. Abend*, 495 U.S. 207, 218-19 (1990). The statutory succession provision likewise provides a deceased author's family with a new chance to receive remuneration for a valuable creation. *Id.* at 218.

### 2. Assignments

Notwithstanding this author-protecting policy, an author can assign his interest in the renewal copyright, either before or after the start of the renewal term. *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 375 (1960) (citing *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943)); *Fred Fisher Music Co.*, 318 U.S. at 647, 655-56. However, the author has only a contingency interest in the renewal, which is all he can assign, "until the renewal period arrives." *Miller Music Corp.*, 362 U.S. at 375-78. If the author dies prior to that point, ownership of the renewal copyright passes to the statutory successors, regardless of whether the author had otherwise previously assigned or devised it. *Id.* at 375. This result follows from the fact that, as in other contractual relationships, a copyright assignee stands in the shoes of the assignor and thus is entitled to the copyright only if the assigning author would otherwise be entitled to it. *See id.* at 377-78; *see also Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) ("'[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor.'" (quoting *Moutsopoulos v. Am. Mut. Ins. Co.*, 607 F.2d 1185, 1189 (7th Cir. 1979))).

Neither *Fred Fisher Music* nor *Miller Music* identified the point at which a pre-renewal-term assignment of a renewal copyright is no longer contingent and is therefore guaranteed to vest in the assignee. The Court did not define "renewal period" or otherwise specify whether an assignment sheds its contingent status upon commencement of the renewal year, registration, or commencement of the renewal term. *See Stewart*, 495 U.S. at 220 n.2 (recognizing the open question). Because the author in *Miller Music* had died more than one year before the termination of the original term, and thus outside of any potential definition of renewal period, the need for further clarity did not arise. *See Miller Music Corp. v. Charles N. Daniels, Inc.*, 158 F. Supp. 188, 190 (S.D.N.Y. 1957).

### 3. The Statutory Language Supports Sony

Despite its somewhat convoluted syntax, the statutory language enacted in 1992 provides an answer. An author is "entitled under paragraph (1)(C) to the renewal and extension of the copyright," 17 U.S.C. § 304(a)(2)(B)(i), if he is still living, *see id.* § 304(a)(1)(C)(i). The renewal copyright vests in any party entitled to it "at the time the application is made." *Id.* § 304(a)(2)(B)(i). The author (and therefore any of his assignees) thus secures an interest in the renewal copyright so long as he is still living at the time of application for renewal with the Copyright Office. This interest is not lost even if the author subsequently dies prior to the commencement of the renewal term. The House Judiciary Committee Report for the 1992 Act confirms this reading, explaining that "[r]egistration during the final year would assure the author or other claimant that his or her right to the renewal term vested on registration, even if he or she died later that year." H. Rep. 102-379(I), at 13.[5]

---

[5] The Committee's reference to the right "vesting" at the time of registration is not necessarily inconsistent with the Act's statement that the renewal copyright "shall vest, upon the beginning of such further term," 17 U.S.C. § 304(a)(2)(B)(i). The word "vest" can refer to several different concepts: an individual's interest may vest at the time he gains an indefeasible right to something or at the time he is actually eligible to receive it. Professor Goldstein recognizes the operation of these varying meanings in the renewal copyright context. *See* 1 Goldstein on Copyright § 6.3.1.2, at 6:24 n.22 (3d ed. 2010) (explaining that, if an assignee or other claimant registers the renewal copyright during the renewal year, "the right to the renewal vests indefeasibly, in interest, if not in possession, at the time the application is made").

Roger Miller was entitled to the renewal copyright because he was living at the time the application for registration was made. Sony was in turn entitled as Miller's assignee, and thus took ownership at the time the interest vested on January 1, 1993.[6]

The fact that the interest in the renewal copyright vests "upon the beginning of such further term," 17 U.S.C. § 304(a)(2)(B)(i), does not dictate a contrary result. The date of vesting is not dispositive as to who owns the copyright, as the 1992 Act "separate[d] the inquiry of who is entitled to the renewal rights from the inquiry of who is alive when renewal vests." *Dimensional Music Publ'g*, 435 F. Supp. 2d at 457; *see also* 3 Nimmer on Copyright § 9.05(C)(2) (describing the two concepts as "uncoupled"). Instead, the date of the renewal application determines entitlement to ownership. Accordingly, a party can become entitled to ownership of the renewal copyright prior to the time it actually vests.[7]

The district court (and RMMI) cited language in *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005), and the prior panel's opinion in this case as support for its conclusion that an assignee has no interest in a renewal copyright if the assigning author dies prior to vesting. In both cases, this language is dicta. The issue in *Broadcast Music* was whether an author's widow and children take equal shares in the renewal interest upon statutory succession; the opinion mentioned vesting only in the course of an overview of the law regarding renewal copyrights. *Id.* at 763-64, 768-69. Moreover, *Broadcast Music* cited *Miller Music*, which, as described above, did not

---

[6]The one other case to address this issue under the 1992 Act also held in favor of the assignee. *Dimensional Music Publ'g, LLC v. Kersey*, 435 F. Supp. 2d 452, 460 (E.D. Pa. 2006). Nimmer's copyright treatise described *Dimensional Music Publishing* as a "textbook case" of the operation of § 304(a)(2)(B)(i). 3 Nimmer on Copyright § 9.05(C)(2). Courts were split on the issue under the 1976 Act, *compare Frederick Music Co. v. Sickler*, 708 F. Supp. 587, 589 (S.D.N.Y. 1989) (author must survive until registration in the renewal year), *with Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 476 (9th Cir. 1991) (author must survive until start of the renewal term), but the 1976 Act did not contain the "at the time the application is made" language.

[7]The scenario of a party's gaining an indefeasible right to something prior to actually being eligible to receive it is hardly unusual, and is often presented, for example, in pension law. In ERISA plans, "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age," even though the benefits are not paid until he actually retires. 29 U.S.C. § 1053(a); *see also Calabro v. City of Omaha*, 531 N.W.2d 541, 550 (Neb. 1995) (holding that "an employee's protected interest in a pension vested before he or she became eligible to collect the pension").

address this issue and, of course, was decided before the 1992 amendments. *RMMI II* remanded to the district court on the very issue of Sony's ownership interest in the 1964 songs and thus did not rule on that issue. 477 F.3d at 395.

### 4. RMMI's Position Is Inconsistent with the Statute

If Congress intended to condition all assignments on the author's survival to the start of the renewal term, it would not have split § 304(a)(2)(B) into two subparagraphs; ownership in all cases would be determined "as of the last day of the original term of copyright," 17 U.S.C. § 304(a)(2)(B)(ii). Under this interpretation, the "at the time the application is made" language in § 304(a)(2)(B)(i) would be meaningless. In accordance with the rules of statutory construction, however, we "must 'giv[e] effect to each word'" and do not interpret a statute in a way that renders a provision "'meaningless or superfluous.'" *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011) (quoting *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998)). Instead, the two subparagraphs articulate different rules for two different sets of circumstances; only if no application is filed is ownership determined "as of the last day of the original term of copyright."

RMMI's reading of § 304(a)(2)(B)(i) as a provision that "simply freezes the eligible statutory successors so that the only successors who may be entitled to the renewal interest on the first day of the renewal period are those who qualified as statutory successors at the time the application was filed," Appellee Br. at 9, finds no support in caselaw or commentary. More damning is RMMI's failure to explain why the then-living Roger Miller would not be included in the closed class of statutory successors. A living author is the first person entitled to the renewal copyright under § 304(a)(1)(C). If the class closes at the time of application, and the author is alive at the time of application, then the author is included within the closed class and the copyright vests in him at the start of the renewal term. The renewal copyright passes to the author's assignee, even if the author has died in between the filing of the application and the renewal term. By describing § 304(a)(1)(C) as "expressly limited to the author's

relatives" and thus rejecting Sony's argument as an attempt "to amend Section 304(a)(1)(C) to include an author's assignees," the district court made a similar error. *RMMI III*, 2010 WL 1026980, at *2.

Nor does the statute support RMMI's contention that the statutory successors hold concurrent contingent interests along with the author's assignees from the time of application until the commencement of the renewal term and thereupon receive sole ownership of the copyright if the author has died in the interim. The statement in *Broadcast Music* that "renewal copyright interests can be held simultaneously by numerous parties" was made in the context of a dispute between an author's widow and child, both of whom occupy the same tier in the statutory successor hierarchy. 396 F.3d at 768. By contrast, a living author is the sole member of the top tier in that hierarchy. A spouse is not "entitled under paragraph (1)(C)," 17 U.S.C. § 304(a)(2)(B)(i), if the author is still living, and thus does not share the renewal interest with him.

Because Roger Miller was "entitled under paragraph (1)(C) to the renewal and extension of the copyright at the time the application [wa]s made," 17 U.S.C. § 304(a)(2)(B)(i), the renewal interest vested in him at the commencement of the renewal period. And because he had previously made an otherwise valid assignment of the renewal interest to Sony, the copyright thus vested in Sony.[8]

### III. CONCLUSION

Because Sony owns the renewal copyrights to the 1964 songs as the assignee of an author who was living at the time of the application for renewal registration, we REVERSE the judgment of the district court holding Sony liable for copyright infringement and awarding damages to RMMI. We REMAND for entry of judgment in favor of Sony.

---

[8] Because we decide that Sony is the owner of the renewal copyrights to the 1964 songs, we need not address the other issues presented in this appeal.