RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BRIDGEPORT MUSIC, INC., WESTBOUND
RECORDS, INC., and SOUTHFIELD MUSIC,
INC.,

          *Plaintiffs-Appellees*,

    v.

RASHAAM A. SMITH, et al.,

          *Defendants*,

JANYCE H. TILMON-JONES,

          *Movant-Appellant*.

No. 12-1523

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:03-cv-72211—Paul D. Borman, District Judge.

Argued: January 23, 2013

Decided and Filed: May 1, 2013

Before: SUHRHEINRICH, MOORE and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey P. Thennisch, DOBRUSIN & THENNISCH PC, Pontiac, Michigan, for Appellant. Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellees. **ON BRIEF:** Jeffrey P. Thennisch, DOBRUSIN & THENNISCH PC, Pontiac, Michigan, for Appellant. Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

SUHRHEINRICH, Circuit Judge.

## I.  Introduction

In 1974,  songwriter, recording artist, producer, and performer Abrim Tilmon, Jr. ("Tilmon"), composed the song "*You're Getting a Little Too Smart*" ("*Smart*").[1]  In 1976, Tilmon assigned all of his rights to the song to Plaintiff Bridgeport Music, Inc. ("Plaintiff").  In 1997,  Defendant rapper Rashaam A. Smith a/k/a Esham A. Smith released the song "*You & Me*," which, according to Plaintiffs Bridgeport, Southfield Music Inc., and Westbound Records, Inc. ("Plaintiffs"), unlawfully contained samples of the composition "*Smart*."  In 2003, Plaintiffs sued Defendants Esham Smith; Overture Music, LLC; Psychopathic Records, Inc.; Red Music Distribution; Reel Life Productions, Inc.; and Scott Santos ("Defendants") for copyright infringement.  In 2004, Plaintiffs obtained default judgments against Defendants.  In 2005, Plaintiffs recorded the judgments with the United States Copyright Office.

In 2011, Janyce Tilmon-Jones ("Tilmon-Jones"), Tilmon's widow and a nonparty to this lawsuit, filed a motion under Federal Rule of Civil Procedure 60(b) in the action, asking the district court to set aside the default judgments because she, not Plaintiffs, was the legal owner of the copyright by operation of law at the time the lawsuit was filed.[2]  The district court denied the motion,  as well as her motion for reconsideration. Tilmon-Jones appeals both of those rulings.  For the reasons discussed below, we AFFIRM the judgment of the district court.

———————————

[1]Tilmon was also a founding member and lead singer for the musical group the Detroit Emeralds. The R&B group performed in the late 1960s and early 1970s.

[2]Tilmon died in 1982, during the initial copyright interest period.  Plaintiffs' copyright interest in the initial copyright expired as of December 31, 2002, and at that point the renewal copyright interest in "*Smart*" reverted to Tilmon-Jones by operation of law.  *See* 17 U.S.C. § 304(a)(1)(C); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 672 F.3d 434, 437-39 (6th Cir. 2012).

Plaintiffs have filed a motion for damages and costs pursuant to Fed. R. App. P. 38 and 28 U.S.C. § 1912, which we GRANT.

## II. Background

### A. The Song and the Claims

Tilmon wrote "*Smart*" in 1974 and it was registered with the United States Copyright Office on March 20, 1974. On March 31, 1976, Tilmon assigned his interest in "*Smart*," along with other compositions, to Plaintiff Bridgeport. On November 4, 1998, Bridgeport filed a second copyright application for "*Smart*," noting that it owned the work "[b]y written assignment." On February 18, 2004, Bridgeport employee Jane Peterer filed a copyright renewal form for "*Smart*," claiming that she was the duly authorized agent of Tilmon-Jones. The registration fee was charged to Bridgeport's account. The application lists the "Renewal Claimant" as "Janyce H. Tilmon." According to Tilmon-Jones, however, she never authorized Bridgeport or its agents to be her agent.

On January 21, 2011, Tilmon's estate filed a renewal application for "*Smart*" with the United States Copyright Office. This application was granted. It lists Tilmon-Jones and Tilmon's two children as claimants to the copyright.

### B. The Action *Sub Judice: Bridgeport Music, Inc. v. Smith*, **No. 2:03-72211**

In June 1997, Defendant rapper Rashaam A. Smith a/k/a Esham A. Smith released the song "*You & Me*" on the album "Bruce Wayne: Gothom City 1987." According to Plaintiffs, the song "*You & Me*" unlawfully contained samples of the composition "*Smart*."

### 1. The Default Judgments

On June 9, 2003, after the initial copyright ownership period had expired but prior to the expiration of the statutory limitations period, Plaintiffs sued Defendants in the Eastern District of Michigan for copyright infringement, asserting that the song "*You & Me*" infringed the composition "*Smart*." *Bridgeport Music, Inc. v. Smith*, No. 2:03-

cv-72211 (E.D. Mich. June 9, 2003).  This action was filed before Judge Borman ("Judge Borman" or "District Court").  Defendants did not file an answer.  On August 16, 2004, Judge Borman entered default judgments against Defendant Reel Life Productions and Smith.  On March 9, 2005, the District Court granted Plaintiffs' motion for attorney fees and entered judgment in favor of Plaintiffs and against Defendants.  The default judgments required Defendants to pay certain sums to Bridgeport, and declared Plaintiffs  "the 100% owner of the entirety of Defendant Reel Life Productions' ownership interest in the copyright in the infringing compositions and sound recordings effective as of the date of the creation of the composition."  The default judgment against Smith declared Plaintiffs "the 100% owner of the entirety of Defendant Esham's ownership interest in the copyright in the infringing compositions and sound recordings effective as of the date of the creation of the composition."  On March 11, 2005, Plaintiffs recorded the default judgment against Smith with the United States Copyright Office.

**2. The Rule 60(b) Motion**

On March 9, 2011, nearly seven years after Judge Borman entered the default judgments, Tilmon-Jones, a nonparty to the original underlying action, filed a motion for relief pursuant to Fed. R. Civ. P. 60(b)(4), (5), and (6), asking Judge Borman to set aside the judgments on the grounds that  she was the copyright owner at the time the lawsuit was filed, since the renewal copyright interest in "*Smart*" had reverted to her by operation of law as of January 1, 2003.  Specifically, she argued that Plaintiffs lacked standing when they filed the lawsuit, rendering the judgments void.

On September 27, 2011, Judge Borman denied Tilmon-Jones's Rule 60(b) motion, holding that Tilmon-Jones did not have standing because she had not shown that she was "strongly affected" by the judgment or made a strong showing that the default judgments were obtained by fraud.  Judge Borman also noted that Tilmon-Jones was "fully able to sue Plaintiffs and have her rights to '*Smart*' fully adjudicated," since she

had already filed a complaint, which was then pending before Judge Friedman.[3] Judge Borman therefore declined to address Tilmon-Jones's arguments for vacating the default judgments under Rule 60(b) "because [Tilmon-Jones] lacks standing under the Rule."

### 3. The Motion for Reconsideration

On October 11, 2011, Tilmon-Jones filed a motion for reconsideration. She raised a new argument, namely that she had standing to bring her motion under a "legal representative" theory, and again asserted that Plaintiffs did not have standing to bring the original action. On December 12, 2011, Judge Borman denied the motion for reconsideration, holding that Tilmon-Jones had waived the legal representative argument by failing to raise it in her initial Rule 60(b) motion or at oral argument. Judge Borman addressed it anyway, and determined that Tilmon-Jones's legal representative argument, based on privity, failed because it contradicted her argument that the default judgments should be set aside under Rule 60(b) because Bridgeport was not her agent and therefore lacked standing. Thus, Judge Borman held that Tilmon-Jones did not have standing as Bridgeport's legal representative pursuant to Rule 60(b).

These two rulings by Judge Borman are the subject of this appeal.

### 4. The Rule 60(d)(3) Motion

On October 24, 2011, before Judge Borman had ruled on her motion for reconsideration, Tilmon-Jones filed another motion for relief from the order of the default judgments, based on a "fraud on the court" theory pursuant to Rule 60(d)(3). In this motion, Tilmon-Jones claimed that Plaintiffs' counsel knew that Bridgeport no longer owned the musical composition "*Smart*" when they filed the action.

On February 22, 2012, Judge Borman dismissed this motion, finding that, even if she had standing, Tilmon-Jones had failed to produce clear and convincing evidence of fraud. Tilmon-Jones did not appeal this ruling.

---

[3] As discussed below, this matter was later reassigned to Judge O'Meara.

### 5.  The Appeal

On January 11, 2012, Tilmon-Jones filed a notice of appeal.  As noted, she appeals the September 27, 2011 opinion and order denying her motion for relief from an order pursuant to Fed. R. Civ. P. 60(b), and the December 12, 2011 opinion and order denying her motion for reconsideration.

### C.  The Prior Action[4]

On September 14, 2006, Tilmon-Jones, individually and as a personal representative of the  Estate of Abrim Tilmon, Jr., sued Armen Boladian ("Boladian"), President of Bridgeport, and Bridgeport, in the Eastern District of Michigan, for copyright infringement, conversion, and breach of contracts.  *See Tilmon-Jones v.*

---

[4]We take judicial notice of the 2006 Action pursuant to Federal Rule of Evidence 201(b), which allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (citing Fed. R. Evid 201(f) advisory committee's note (1972)).

In addition, we take judicial notice of two other similar actions whose decisions were rendered after Judge Borman issued his decision on January 11, 2011: *Tilmon-Jones v. Bridgeport Music, Inc.*; Case No. 5:11-cv-13002 (E.D. Mich) ("2011 Action"), and the "Tennessee Motions."  The 2011 Action was filed in the Eastern District of Michigan.  On July 13, 2011, four months after she filed the Rule 60(b) motion, Tilmon-Jones and her children filed a complaint against Bridgeport and its president, and several other record companies, including Westbound and Southfield,  seeking a declaration of ownership of numerous songs, including "*Smart*," by Tilmon. *Tilmon-Jones v. Bridgeport Music, Inc.*, No. 11-cv-13002 (E.D. Mich., filed July 13, 2011).  The 2011 complaint alleged that Defendants wrongfully claimed ownership of numerous musical works by Tilmon, even though copyrights in these musical works have reverted, as a matter of law, to Tilmon's estate.  This action, which was originally assigned to Judge Friedman, was reassigned to Judge O'Meara on January 20, 2012.

On September 26, 2012, Judge O'Meara dismissed this action as barred by the release clause in the agreement that settled the 2006 Action, and res judicata, because there was a final decision on the merits of the 2006 Action, the same parties were involved, and Tilmon-Jones could have litigated issues related to copyright infringement of "*Smart*" in the 2006 action.  He also awarded Defendants their reasonable attorney fees and costs in defending the action "[a]s a deterrent against future misconduct."

On August 25, 2011, Tilmon-Jones filed Rule 60(b) motions in seven actions filed by Plaintiffs in 2001 in the Middle District of Tennessee, claiming that she became the legal owner of all copyright interest in "*Smart*," as of January 1, 2003.  She was not a party to those seven actions.  Tilmon-Jones also filed Rule 60(d)(3) motions for relief based on fraud on the court in each of the seven cases.  On March 7, 2012, Magistrate Judge Brown denied both motions in all seven cases, for several reasons.  He found that: (1) Bridgeport was the owner of the copyright to the song "*Smart*" when it filed the seven cases in 2001, (2) the district court in Nashville had subject matter jurisdiction in the Nashville suits, which Bridgeport brought as the copyright owner of "*Smart*," (3) the settlement agreement between the parties in the 2006 Action was "a full and complete release of Bridgeport for any and all claims that could have been brought as a result of the Michigan litigation," and Tilmon-Jones was or should have been aware of the fact that the release applied to all 37 songs referenced in that litigation, (4) res judicata or claim preclusion applied even if the release were not fully operable, because Tilmon-Jones could have litigated her claims in the 2006 Action, and (5) the motion was not brought "within a reasonable time" as required by Rule 60(b), since judgment had been entered on June 15, 2005.

Judge Brown also denied Tilmon-Jones's Rule 60(d)(3) motion.  Tilmon-Jones did not appeal Judge Brown's order.

*Boladian*, No. 5:06-cv-14048 (E.D. Mich., filed Sept. 14, 2006) ("the 2006 Action"). This action was filed before Judge O'Meara. The complaint alleged that two songs by Tilmon – "*Feel the Need (In Me)*," and "*Yes I Know I'm in Love*" – were covered by a Songwriter's Agreement that vested administration of the copyright in Bridgeport, but also required Bridgeport to pay royalties to Tilmon-Jones. These two songs are listed in Attachment C to the complaint. Tilmon-Jones alleged that the defendants were not paying the royalties. Tilmon-Jones also alleged that the defendants had "registered the Attachment C Compositions for copyright in Defendants [sic] own name in direct violation of Plaintiff's ownership." The 2006 complaint alleged breach of contract, copyright infringement, unjust enrichment, conversion, and accounting, and sought *inter alia*, a "declaration that the copyright ownership in and to the Attachment C Compositions are owned and controlled by Plaintiff."

Two other songs lists are attached to the 2006 complaint, Attachments A and B. The 2006 complaint acknowledged that Tilmon assigned the copyrights to the songs listed in Attachment A and Attachment B to Bridgeport and Boladian. "*Smart*" is listed on Attachment A.

On August 31, 2007, the parties entered into a formal settlement agreement, whereby Tilmon-Jones and the heirs to "settle[d], compromise[d] and dispose[d] of the District Court Action claims, and any and all other claims they have or might have against COMPANIES including, but not limited to, any claims that may arise in the future pursuant to any newly discovered facts." The district court dismissed all causes of action and claims as to Boladian and Bridgeport Music with prejudice. On September 6, 2007, Judge O'Meara entered a consent order of settlement between the parties. It incorporated by reference the settlement agreement.

On January 26, 2010, Tilmon-Jones filed a motion to enforce the settlement, but withdrew it on February 18, 2010. She then filed a motion for fraud on the court on November 19, 2010. Defendants responded, claiming the motion had no merit, and requested sanctions. On January 4, 2011, Tilmon-Jones withdrew the motion. In light of Tilmon-Jones's withdrawal, Judge O'Meara declined to grant sanctions.

On November 1, 2011, Tilmon-Jones refiled her motion to set aside the settlement, alleging fraud on the court. On January 10, 2012, Judge O'Meara denied it as without legal or factual basis. On September 26, 2012, Judge O'Meara granted sanctions against Tilmon-Jones and her attorneys, pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

### III. Analysis

### A. The Copyright Interests

Although it does not really explain Tilmon-Jones's litigation strategy, it is helpful to know *who* was entitled to *what* copyright interests in "*Smart.*" The following is clear: (1) Based on their assigned interest in the initial copyright, Plaintiffs had the right to sue for infringing acts occurring up through December 31, 2002, *see* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."), and they had three years after that date to bring a cause of action. *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."); *Dassault Systemes, SA, v. Childress*, 663 F.3d 832, 844 (6th Cir. 2011), *cert. denied*, 133 S. Ct. 286 (2012); (2) Because Tilmon died prior to the renewal term, Tilmon's contingency interest in the renewal copyright passed to Tilmon-Jones and Tilmon's children, on January 1, 2003. *See* 17 U.S.C. § 304(a)(1)(C); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 672 F.3d 434, 437-39 (6th Cir. 2012).

### B. Standard of Review

Tilmon-Jones invoked Rule 60(b)(4), which provides relief from void judgments, Rule 60(b)(5), which covers changed circumstances, and Rule 60(b)(6), which allows for relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P.

60(b).[5] This court generally reviews a district court's denial of a Rule 60(b) motion for relief from judgment for abuse of discretion. *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 69-70 (6th Cir. 2012); *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012); *Jones v. Illinois Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). However, we review denials of Rule 60(b)(4) motions de novo, *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011), as well as denials based upon an interpretation and application of the Federal Rules of Civil Procedure, *see Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 355 F.3d 574, 583 (6th Cir. 2004).

Judge Borman ruled that Tilmon-Jones lacked "standing" under Rule 60(b), and therefore did not review her arguments for relief under the rule. Properly framed, the question in this case is whether Tilmon-Jones, as a nonparty to the underlying action, qualifies for relief under Rule 60(b). *See Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011) (stating that the question of statutory standing asks "'whether *this* plaintiff has a cause of action under the statute'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998) (emphasis in *Steel Co.*)).[6] Thus, the question of "standing" in this case involves a question of law, such that our review is de novo. *See Kalamazoo*

---

[5] Federal Rule of Civil Procedure 60 states:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

[6] Both parties contend that the other side lacks Article III standing. "Framing the issue in this way, however, is potentially confusing because 'standing,' by itself, traditionally has referred to whether a plaintiff can satisfy Article III's case-or-controversy requirement." *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011) "[S]tanding is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction." *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (emphasis omitted); *Roberts*, 655 F.3d at 580 (quoting *Davis*). It is clear that both Plaintiffs and nonparty Tilmon-Jones satisfy this threshold requirement vis-a-vis the defendants in this action.

*River Study*, 355 F.3d at 583 (stating that "we must treat the district court's interpretation and application of the Federal Rules of Civil Procedure as a question of law and, as with all legal questions, review [the district court's] analysis de novo" (internal quotation marks and citation omitted)).  *See generally Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning." (internal quotation marks and citation omitted)).

### C.  Applicability of Rule 60(b)

Initially, we must determine whether Tilmon-Jones, as a nonparty to the underlying action, is entitled to relief under the rule.  Rule 60(b) provides in pertinent part that a "court may relieve a party or its legal representative" from a final judgment.  Fed. R. Civ. P. 60(b); *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1519-20  (11th Cir. 1987).  "The general rule is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion."  *Id.* at 1520 (citing cases).

Tilmon-Jones is not a party.  Tilmon-Jones is also not the legal representative of Plaintiffs, as she argued for the first time in her motion for reconsideration, since she does not have any legal relationship with Plaintiffs that makes her in any way Plaintiffs' legal representative.  *See Kem*, 817 F.2d at 1520.  As the district court noted, this theory directly contradicts Tilmon-Jones's argument that, she, not Plaintiffs, is the rightful owner of the copyright and that Plaintiffs were not her agent.  In short, Tilmon-Jones, as a nonparty, does not qualify for relief under the plain language of Fed. R. Civ. P. 60(b).  *See Ericsson, Inc. v. InterDigital Comms. Corp.*, 418 F.3d 1217, 1224 (Fed. Cir. 2005) ("The plain language of Rule 60(b) only allows relief to be given to 'a party' to the litigation." (and cases cited therein)).

Notwithstanding the general rule that nonparties do not have standing under Rule 60(b), several courts have allowed relief where the nonparty is in some form of privity.  *Eyak Native Village v. Exxon Corporation* is instructive.  25 F.3d 773, 777 (9th Cir. 1994).  In *Eyak*, the State of Alaska and the United States sued Exxon in connection with the Alaska oil spill that ended in a consent decree.  Certain environmental organizations,

not parties to the litigation, moved to modify the consent decree. *Id.* at 774-75. The court found that "[t]he citizens whom the [environment organizations] sought to represent were more than in privity with the State; they were identical." *Id.* at 777. *See also Gen. Med.*, 475 F. App'x at 65 (entertaining an intervening party's post-judgment motion to set aside a four-year-old consent judgment, because the intervening party had acquired the defendant corporation during the pendency of the original suit and was therefore in privity of contract with the defendants); *In re La Sierra Fin. Servs, Inc.*, 290 B.R. 718, 724-31 (BAP 9th Cir. 2002) (holding that subsequent purchasers of property sold at a bankruptcy sale were in privity with the initial purchasers of the property and so had standing under Rule 60(b)(4) to set aside a bankruptcy court's order that arguably reinstated a lien on the property, which had been sold to the initial purchasers free of liens). *See generally Kem*, 817 F.2d at 1520 (noting that "[i]t is not clear that the privity exception does any more than restate in different language the rule that persons tantamount to a party may be allowed standing"). But here, Tilmon-Jones's interests are at odds with Plaintiffs' interests, so Tilmon-Jones cannot be afforded relief on some notion of privity with Plaintiffs.

Several courts have also allowed a nonparty to seek relief under Rule 60(b) where its interests were directly or strongly affected by the judgment. *See, e.g., Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 188-89 (2d Cir. 2006); *Binker v. Pennsylvania*, 977 F.2d 738, 745 (3d Cir. 1992); *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1051-52 (2d Cir. 1982). *See also In re Lawrence*, 293 F.3d 615, 627 n.11 (2d Cir. 2002) (noting that "several circuit courts have permitted a non-party to bring a Rule 60(b) motion or a direct appeal when its interests are strongly affected, and we have permitted such a motion on at least one occasion"; citing cases). In *Grace*, for example, the Second Circuit held that "where plaintiffs enter into a settlement agreement with a judgment-proof, pro se defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is 'strongly affected' by the judgment and entitled to standing to bring a Rule 60(b) motion." *Grace*, 443 F.3d at 188. The *Grace* court held that

nonparty movants were "sufficiently connected and identified with" a suit to have standing to bring a Rule 60(b)(6) motion. *Id.*[7] The court reiterated that under the particular circumstances of the case, "[w]e thus carve out an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b)." *Id*. at 189.

In *Dunlop*, the nonparty movants were prevented from bringing an age discrimination action in state court because of a prior judgment in federal court to which they were not a party, but which limited their ability to file their state law claims. The former employees moved under Rule 60(b)(6) to amend the stipulation to clarify that it did not bar their pursuit of individual state law claims. The district court denied the motion on the grounds that the former employees lacked standing to invoke Rule 60(b). The Second Circuit reversed, holding that "[a]lthough Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments, . . . on the facts of this case appellants were sufficiently connected and identified with the Secretary's suit to entitle them to standing to invoke Rule 60(b)(6)." *Dunlop*, 672 F.2d at 1052. The court rested its decision on the fact that "the principles governing standing to invoke Rule 60 are sufficiently flexible to permit a finding of standing." *Id.* at 1051-52 (citing Advisory Committee Notes). *Cf. Kem,* 817 F.2d at 1520-21 (holding that nonparty did not have standing under Rule 60(b) based on fraud; nonparty's rights were not directly affected since the judgment did not bind the nonparty in any way and the question of the nonparty's indemnity to the defendant in the underlying action was already before an alternative forum).

Even if we adopted such an exception, Tilmon-Jones's motion would clearly fail. As the district court held, Tilmon-Jones has not established that her renewal copyright interest is "strongly affected" because she has not shown that she was prevented from litigating any claims due to a previous judgment to which she was not a party. In fact,

---

[7]The *Grace* court also noted that its decision was "also in keeping with the principles governing standing." *Id.* at 188 (citing *Dunlop*, 672 F.2d at 1052).

she was able to successfully register her renewal rights with the United States Copyright Office, and file her own lawsuit.[8]

This court has allowed a nonparty to raise a claim of fraud on the court under Rule 60(b). *See Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980) (per curiam). In *Southerland*, the trial court approved a settlement after the prevailing party's counsel assured the court that he would satisfy a nonparty's lien from his 50% contingent fee. *Id.* at 979. The prevailing counsel did not make the payment to satisfy the lien. The nonparty filed a Rule 60(b) motion alleging fraud on the court.[9] The district court agreed, and reallocated the settlement proceeds. *Id.* We affirmed. Observing that "Rule 60(b) by its own terms does not limit the court's power to set aside a judgment induced by fraud,"[10] this court held that a nonparty may raise a claim of fraud on the court under Rule 60(b).[11] *Id.* at 980. Tilmon-Jones has not created an inference of fraud on the court. Indeed, the default judgments on their face state merely that Bridgeport, Southfield, and Westbound are "the 100% owner of the entirety of Defendant Esham's ownership interest in the copyright in the infringing compositions and sound recordings effective as of the date of the creation of the composition," as well as "the 100% owner of the entirety of Defendant Reel Life Productions' ownership interest in the copyright in the infringing compositions and sound recordings effective as of the date of the creation of the composition." Thus, on their face, the default judgments do not deprive

---

[8] In the 2011 Action, Tilmon-Jones alleged that "each of the musical works complained of herein [including "*Smart*"] entered their renewal term well subsequent to Abrim Tilmon's passing on July 6, 1982," that "each of the musical works complained of herein automatically vested in the Estate of Abrim Tilmon as of the commencement of the renewal period of such musical works," and that Defendants "falsely[] and fraudulently claimed and continue to claim ownership to the renewal term of the musical works complained of herein by . . . renewing each of the musical works complained of herein with the U.S. Copyright Office." Tilmon-Jones did not assert that Plaintiffs actually used the default judgments falsely for any infringements occurring during the renewal copyright period.

[9] Although the *Southerland* court did not articulate which subsection of Rule 60(b) was at issue, presumably the motion was brought under Rule 60(b)(6) because it was filed more than one year after final judgment. *See* Fed. R. Civ. P. 60(c)(1) (stating that motions brought under Rule 60(b)(1)-(3) must be brought within "a year after the entry of the judgment or order or the date of the proceeding").

[10] The district court in *Southerland* noted that a court has inherent power to set aside a judgment for fraud. *Southerland v. County of Oakland*, 77 F.R.D. 727, 732 (E.D. Mich. 1978). The Sixth Circuit adopted the reasoning of the district court. *Southerland*, 628 F.2d at 980.

[11] This court also held that the nonparty also did not need to intervene in order to raise its claim. *Id.* at 980.

Tilmon-Jones and her children of any of their rights, or limit them from proceeding with their own cause of action. Furthermore, Plaintiffs sued Defendants within the three-year limitation period for such claims.

In sum, we affirm the district court's conclusion that nonparty Tilmon-Jones was not entitled to relief under Fed. R. Civ. P. 60(b). We therefore need not consider her arguments that she was entitled to relief under Rule 60(b)(4), (5), and (6).

### D. Other Bases For Dismissal

Plaintiffs offer several other reasons why Tilmon-Jones is barred from challenging the district court's orders of default judgment: (1) her motion is untimely, and (2) it is precluded by a settlement agreement.[12]

### 1. Timeliness

A motion to vacate a judgment under Rule 60(b)(4)-(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1); *Gen. Med.*, 475 F. App'x at 75 (Rule 60(b)(6)); *United States v. Dailide*, 316 F.3d 611, 617 (6th Cir. 2003) (Rule 60(b)(4)). "The reasonableness of the delay 'depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.'" *Gen. Med.*, 475 F.App'x at 76 (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).

Under these factors, Tilmon-Jones's delay in filing her Rule 60(b) motion was not reasonable. Tilmon-Jones had constructive notice of the default judgments as of March 11, 2005, when they were recorded in the United States Copyright Office. *See* 17 U.S.C. § 205(c) (stating that "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document"); *Latin Am. Music Co. v. Archdiocese of San Juan of Roman Catholic & Apostolic Church*,

---

[12]Because it found that Tilmon-Jones lacked standing, the district court found it unnecessary to address these additional defenses. We may affirm the district court's decision for any reason, even one not considered by the district court. *See U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 750 (6th Cir. 2003).

Plaintiffs also raised res judicata as an affirmative defense. Because the first two reasons clearly preclude Tilmon-Jones from challenging the default judgments, we will not address res judicata.

499 F.3d 32, 40 (1st Cir. 2007) ("A copyright registration certificate in the Copyright Office provides constructive notice as to the ownership of the copyright and the facts stated in the registration certificate." (internal quotation marks and citation omitted)). *See also Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998) ("Constructive notice of a valid copyright is presumed upon registration."). Moreover, Tilmon-Jones was actively litigating copyright claims to other songs in the Abrims catalogue as early as 2006. Yet she did not file the Rule 60(b) motion until 2011, nearly seven years after the entries of default judgment, and six years after constructive notice. Under these circumstances, Tilmon-Jones's motion was clearly untimely. *Cf. Gen. Med.*, 475 F.App'x at 75-76 (four-year delay was unreasonable; and cases therein).

## 2. Release

The consent order of settlement in the 2006 Action, which dismissed all causes of action and claims as to Boladian and Bridgeport Music with prejudice, incorporated the Memorandum of Consent Settlement Agreement ("Agreement") between the parties. The Agreement states in pertinent part as follows:

> WHEREAS, the ESTATE, TILMON-JONES, AND HEIRS voluntarily and with full knowledge of their rights and the provisions herein, now desire to settle, compromise and dispose of the District Court Action claims, and any and all other claims they have or might have against COMPANIES including, but not limited to, any claims that may arise in the future pursuant to any newly discovered facts which are not yet known to the ESTATE, TILMON-JONES and HEIRS;

> . . . .

> 5. TILMON-JONES, ESTATE AND HEIRS hereby release and forever discharge Armen Boladian, individually, and Bridgeport as well as their officers, . . . successors and assigns, privies in contract, from all . . . actions, causes of action, charges, complaints, judgments, suits, warranties, covenants, contracts, promises, obligations, liabilities, or claims of any kind, type, or description, whether now known, disputed or undisputed, accrued or unaccrued, liquidated or contingent, foreseen or unforeseen, asserted or unasserted, filed or not yet filed, in contract, tort, at law, or in equity, or before any local, state or federal court, administrative agencies or departments, existing at the time of this Agreement, or which subsequently may exist or arise following

execution of this Agreement, that could have been brought by TILMON-JONES, ESTATE AND HEIRS pertaining to the causes of action contained in the District Court Action for which this Agreement pertains.

6.     . . . TILMON-JONES, ESTATE AND HEIRS acknowledge that they may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the District Court Action for which this Agreement pertains, but that it is their intention hereby to fully, finally and forever settle and release any and all released matters . . . known or unknown, . . . which now exist, may exist, or heretofore have existed . . . .

"The language of the release is as clear as would be humanly possible to make in this regard." *Taggart v. United States*, 880 F.2d 867, 870 (6th Cir. 1989) (characterizing very similar language, "where the language of the agreement expressly and with emphasis releases the releasees 'from all KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN bodily and personal injuries . . . .'"). *See generally Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006) ("The scope of a release is controlled by the language of the release." (applying Michigan law)). The Settlement Order here clearly and unambiguously releases Boladian, Bridgeport, its successors, assigns, and privies in contract from all claims that "could have been brought" by Tilmon-Jones. This would include the present Rule 60(b) motion. Although the 2006 Action did not litigate the alleged copyright infringement of "*Smart,*" it specifically mentioned the song in Attachment A and described the agreement between Tilmon and Bridgeport. Thus, Tilmon-Jones's present claim based on "*Smart*" is barred by the release in the 2006 Action.

## IV. Attorney's Fees and Costs

Also before this court is Plaintiffs' motion for damages and costs pursuant to Fed. R. App. P. 38 and 28 U.S.C. § 1912. Section 1912 provides that, "[w]here a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." 28 U.S.C. § 1912. Rule 38 states that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court

and reasonable opportunity to respond, award just damages and single or double costs to the appellee." We also have discretion, pursuant to 28 U.S.C. § 1927, "to assess excess costs, expenses, and attorney fees directly against an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously.'" *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012) (per curiam) (quoting 28 U.S.C. § 1927).

"An appeal is frivolous 'if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes.'" *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1143 (6th Cir.1990) (quoting *Dallo v. INS*, 765 F.2d 581, 589 (6th Cir.1985)). As our analysis regarding Plaintiffs' defenses attests, the appeal in this case is all of the above. The conduct of Tilmon-Jones and her counsel was objectively and patently meritless and a waste of judicial resources. Tilmon-Jones maintains that her appeal is not frivolous because the question of whether a nonparty has standing under Fed. R. Civ. P. 60(b) was not obviously without merit. This may be true, but it does not obviate the fact that her appeal was utterly without merit because it was untimely and barred by a release. We find that this appeal is frivolous and that sanctions are appropriate. *See generally Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998).

## V. Conclusion

For all of the foregoing reasons, the judgment of the district court is AFFIRMED. Plaintiffs' motion for damages and costs under Rule 38 and § 1912 is GRANTED. Plaintiffs shall file an affidavit within thirty days of this order setting forth the costs and attorney's fees incurred in defending this appeal. Said amounts shall be shared equally by Tilmon-Jones and appellate counsel.