RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL MCDONALD; QUINTON LYTLE,

      *Plaintiffs-Appellees*,

*v.*

MARICO FLAKE (14-6258); CITY OF MEMPHIS (14-6370),

      *Defendants-Appellants*.

Nos. 14-6258/6370

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cv-02511—Sheri H. Lipman, District Judge.

Decided and Filed: February 29, 2016

Before: BATCHELDER, ROGERS, and COOK, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Mary Elizabeth McKinney, Deborah Godwin, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, P.C., Memphis, Tennessee, for Appellant in 14-6258. Henry L. Klein, Richard J. Myers, APPERSON CRUMP PLC, Memphis, Tennessee, for Appellant in 14-6370. Robert L. J. Spence, Jr., Bryan M. Meredith, THE SPENCE LAW FIRM, Memphis, Tennessee, for Appellees.

_____

## OPINION

_____

ALICE M. BATCHELDER, Circuit Judge. In this interlocutory appeal from the denial of summary judgment, we are presented with three separate but related issues. In the first, a

1

defendant police officer, Marico Flake, argues that the plaintiffs' evidence did not create a genuine dispute of material fact so as to overcome his motion for summary judgment based on qualified immunity.  On this issue, we have appellate jurisdiction and AFFIRM.

In the second, the defendant City of Memphis, Tennessee, argues that the plaintiffs' evidence did not create a genuine dispute of material fact to overcome summary judgment on charges of municipal liability, and pursues this interlocutory appeal under a theory of pendent appellate jurisdiction.  On this issue, we lack jurisdiction and necessarily DISMISS.

In the third issue, the plaintiff-appellees, Michael McDonald and Quinton Lytle, seek sanctions against the defendant-appellants, in the form of attorney's fees they have incurred in defending this appeal, on the basis that this appeal is knowingly frivolous and taken in bad faith. On this issue, considering the defendants' disregard for the governing law and the particular circumstances here, we agree with the plaintiffs and GRANT the motion for sanctions.

## I.

This interlocutory appeal arises from the district court's denial of the defendants' motions for summary judgment in a civil lawsuit, brought under 42 U.S.C. § 1983 and various state laws, in which the plaintiffs claim excessive force against a certain police officer and municipal liability against his employer.  The plaintiffs, Michael McDonald and Quinton Lytle, are both adult African-American males.  The named defendants are the City of Memphis, Police Officer Marico Flake (an African-American male), and up to five other "John Doe" police officers.

During the two years of discovery, the parties entered substantial evidence into the record, including deposition transcripts, affidavits, and documentary evidence.  The district court relied on and cited this evidence in its memorandum opinion (R. 114) and we rely on that determination of facts for our purposes here, both in summarizing the case and in our analysis.

## A.

At about 3:00 a.m. on July 4, 2011, McDonald, Lytle, and four adult female friends, at least two of whom were Caucasian, were walking past the Memphis Police Department's

Entertainment District Unit (EDU) precinct. They were coming from the nearby Entertainment District, where they had spent the evening socializing and drinking alcoholic beverages.

Meanwhile, several off-duty police officers, including defendant Officer Flake, had congregated in the EDU precinct parking lot to socialize. This included at least some officers who were drinking alcohol, both beer and harder alcohol. Such alcohol consumption by off-duty officers at the EDU precinct, commonly dubbed "Choir Practice" by its participants, was not only commonplace at the EDU precinct, but had been occurring for decades at precincts throughout the City.

When the plaintiffs stopped in front of the EDU precinct, Officer Flake approached them and, in telling them to move along, referred to their female Caucasian companions as "snow bunnies." No one in this case disputes that this is commonly understood to be a racial slur. McDonald explained that because he smelled alcohol on Officer Flake's breath, because Officer Flake had not identified himself as a police officer, and mostly because of the inflammatory "snow bunnies" slur, McDonald responded: "Who the fuck are you?" But the plaintiffs' group nonetheless walked away, crossing the street, whereupon Officer Flake yelled after them, "I'm going to show y'all who I am," and violently attacked McDonald. Lytle turned around to see Officer Flake kneeing McDonald in the back and another officer tackling McDonald. Coming to McDonald's aid, Lytle tried to pull Officer Flake off McDonald but other officers joined in and—while shouting "Stop resisting arrest!"—punched, kicked, and struck the plaintiffs with batons or flashlights, causing injuries that left each plaintiff with over $7,000 in medical bills.

Officer Flake denied any wrongdoing and offered a different, and irreconcilable, account of these events, in which he was faultless and victimized by the plaintiffs' misconduct. But all parties agree that the officers eventually subdued plaintiffs McDonald and Lytle, placed them into physical custody, and transported them both to a hospital emergency room for treatment of their injuries. When the hospital discharged them, the police booked both into custody at the Shelby County Criminal Justice Center and charged them with resisting official detention, public intoxication, and disorderly conduct. But McDonald and Lytle spent less than a day in custody before being released and the State later dismissed all charges against them.

**B.**

McDonald and Lytle filed an administrative complaint with the Memphis Police Department's Inspectional Services Bureau, which found that the officers had used excessive force and violated departmental personal conduct policies. The officers appealed the resulting suspensions but the record does not report the outcome of that appeal.

McDonald and Lytle also sued both Officer Flake and the City of Memphis in federal court, claiming arrest without probable cause, excessive force, and municipal liability. Officer Flake moved for summary judgment on grounds of qualified immunity, but the district court denied the motion upon finding genuine disputes of material fact, such as who initiated the physical violence and whether Officer Flake's use of force was objectively reasonable given the accusations that he had been drinking, provoked the situation with a racial slur, failed to identify himself as a police officer, and knew that the many other nearby, alcohol-impaired officers would engage violently. The City moved for summary judgment on the municipal liability claim, but the district court denied that motion upon finding genuine disputes of material fact, such as whether the City was indifferent to officers' alcohol consumption at the precinct given testimony that the practice was "widespread" for the past 30 years and not a single officer had ever been disciplined for it.

**C.**

The plaintiffs filed suit on June 27, 2012, and the parties engaged in discovery and motion practice for over two years. On June 25, 2014, the court set trial to begin on October 20, 2014. On August 8, 2014, Officer Flake and the City moved separately for summary judgment. On September 26, the City moved to continue the trial to a later date. At a motion hearing on October 2, the court orally denied the motion to continue, alerted the parties that it would be denying the motions for summary judgment in a forthcoming order, and reiterated that trial would begin on October 20, with a pretrial conference on October 14.

The district court filed the order denying summary judgment on October 7, 2014. Officer Flake filed a notice of interlocutory appeal on October 10, 2014, and later that same day, the plaintiffs responded with a "Motion to Certify Defendant Marico Flake's Interlocutory Appeal as

Frivolous and Proceed to Trial, and for Expedited Briefing Schedule." R. 126. Relying primarily on *Yates v. City of Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991), the plaintiffs argued that because the district court based its decision on disputed facts, this court would lack appellate jurisdiction, and that this is a "[p]roceeding[] masquerading as [a] *Forsyth* appeal[] but in fact not presenting genuine claims of immunity," *id.* at 448 (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)), making the appeal frivolous and brought solely to delay the trial, which was still scheduled to begin on October 20 (just ten days later). On October 13, 2014, the City filed a notice of interlocutory appeal, purporting to "join" Officer Flake's appeal, R. 128, and on that same day these two defendants filed a "Joint Motion for Stay Pending Appeal," R. 129. Also that same day, the plaintiffs filed a response, urging the court to deny the stay and to "certify the defendants' interlocutory appeals as frivolous," R. 130. Further argument ensued in the form of multiple reciprocal responses and replies.

Following the hearing on October 14, 2014, the district court granted the defendants' motion to stay and correspondingly denied the plaintiffs' motion to declare the appeals frivolous. R. 144 (Oct. 16, 2014). In its order, the court reiterated that its denial of summary judgment rested on the genuine disputes of material fact, but conceded that Officer Flake *could* raise a legal issue for which this court would have interlocutory appellate jurisdiction, emphasizing:

> [I]t is well recognized that such appeals are only appropriate where they are based on a question of law, not a factual dispute. *Mitchell* [*v. Forsyth*, 472 U.S. 511, 530 (1985)]. Therefore, as the case law recognizes, on such an appeal the defendant must accept the plaintiffs' version of the facts. *Latits v. Phillips*, 573 F. App'x 562, 564-65 (6th Cir. 2014); *Quigley v. Tuong Vihn Thai*, 707 F.3d 675 (6th Cir. 2013).
>
> The contents of the [defendants'] written filings and arguments before the [c]ourt in its October 14, 2014, hearing rehashed many of [the] disputes Officer Flake has with Plaintiffs' version of the facts. However, Officer Flake advances at least one argument addressing a purely legal issue–that is whether his use of force was objectively reasonable as a matter of law. The [c]ourt agrees that such an argument is immediately appealable, *so long as defendant accepts as true for the purposes of the motion Plaintiff's version of the facts*. Although Officer Flake's filings seemingly stop short of accepting the Plaintiffs' version of the facts, it appears that this is an issue for the Sixth Circuit to address, not this district court.

R. 144 at 2-3 (emphasis in original).

Consequently, despite some clear reluctance,[1] the court refused to declare the appeals frivolous and instead allowed them to proceed for interlocutory review. As noted at the outset, the three issues before us in this appeal are Officer Flake's argument that he is entitled to qualified immunity on the plaintiffs' claims of excessive force and arrest without probable cause, the City's argument that it is entitled to summary judgment on the plaintiffs' claim of municipal liability, and the plaintiffs' claim that these appeals are frivolous and thus warranting sanctions. We address each in turn.

## II.

Officer Flake argues that he is entitled to qualified immunity. The plaintiffs disagree and also insist that we lack jurisdiction to decide this appeal because not only did the district court base its denial of qualified immunity on its determination that genuine disputes of material fact required decision by a jury, but because Officer Flake rests his appeal solely on his disagreement with that determination of the facts. Thus we must first establish that we have appellate jurisdiction; then we must determine the extent or limitations of that jurisdiction; and only then may we exercise that jurisdiction to decide the merits of the argument that is properly before us.

## A.

Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id.* at 680. In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a "genuine issue of fact," that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).

---

[1]The district court opined that it was "disturbed by Officer Flake's participation in the case for two years before filing a motion related to his claim for qualified immunity" and "troubled by the lack of incentive for defendants to behave otherwise, particularly given the length of time this case has been pending, but . . . there appears to be no alternative for a district court other than to stay its proceedings pending the appeal." R.144.

Stated another way, if the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). As the denial of summary judgment is ordinarily not a final decision within the meaning of 28 U.S.C. § 1291, it is generally not immediately appealable. But the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of [] § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Thus, we may decide an appeal challenging the district court's *legal* determination that the defendant's actions violated a constitutional right or that the right was clearly established. *Id*. We may also decide an appeal challenging a *legal* aspect of the district court's factual determinations, such as whether the district court properly assessed the incontrovertible record evidence. *See Plumhoff v. Rickard*, 572 U.S. --, 134 S. Ct. 2012, 2019 (2014); *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014). And we may decide, as a *legal* question, an appeal challenging the district court's factual determination insofar as the challenge contests that determination as "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Plumhoff*, 134 S. Ct. at 2020.

We may not, however, decide an appeal challenging the district court's determination of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Because such a challenge is purely fact-based, lacking any issue of law, it "does not present a legal question in the sense in which the term was used in *Mitchell*," *Plumhoff*, 134 S. Ct. at 2019, and is therefore not an appealable "final decision" within the meaning of 28 U.S.C. § 1291. These types of prohibited fact-based ("evidence sufficiency") appeals challenge directly the plaintiff's allegations (and the district court's acceptance) of "what [actually] occurred[] or why an action was taken or omitted," *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), who did it, *Johnson*, 515 U.S. at 307, or "nothing more than whether the evidence could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We have also explained that the defendant-appellant may

not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal. *See Romo v. Largen*, 723 F.3d 670, 673-74 (6th Cir. 2013).

In the event that legal and factual challenges are confused or entwined, "we must separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Roberson*, 770 F.3d at 402 (citing *Johnson*, 515 U.S. at 319) (quotation marks omitted). Similarly, we can separate an appellant's reviewable challenges from its unreviewable. *DiLuzio*, 796 F.3d at 610; *Romo*, 723 F.3d at 674 & n.2 (6th Cir. 2013) (accepting appellate jurisdiction by ignoring the "factual disputations" and "ruling on what [wa]s properly before us [while] say[ing] nothing about what [wa]s jurisdictionally not before us"). That is, we can "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (deciding based on the plaintiff's record facts).

In so doing, because we defer to the district court's factual assessments, ideally we need look no further than the district court's opinion for the facts and inferences cited expressly therein. *DiLuzio*, 796 F.3d at 611. That is, we can often merely adopt the district court's recitation of facts and inferences. *See Johnson*, 515 U.S. at 319. And we find it appropriate to do so here, given Officer Flake's arguments and the plaintiffs' counterarguments. Thus, in deciding this appeal, we adopt the district court's articulated facts and inferences.

It bears mention, however, that, in adopting or accepting the district court's factual determinations for the purpose of deciding this interlocutory appeal, we are not ourselves making any findings of fact or inferences for purposes of any subsequent proceedings. *DiLuzio*, 796 F.3d at 611; *see also Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010) ("Whether [the plaintiff] is ultimately able to prove the alleged factual bases for his claims is a matter left for the finder of fact [on remand]—not the appellate court on interlocutory appeal.").

**B.**

In his brief on appeal, Officer Flake barely even feigns an attempt at accepting the plaintiffs' version of the facts (but for one[2]) and instead propounds his own version of the facts and the inferences that he would draw from them. For example, the district court cited McDonald's assertion that he smelled alcohol on Officer Flake's breath, R. 114 at 2, and drew an inference that Flake's consumption of alcohol prior to the confrontation might have affected the reasonableness of his actions towards the plaintiffs, R. 114 at 13. On appeal, Flake does not accept either McDonald's evidence or the district court's inference, arguing instead:

> Officer Flake does dispute that he was personally drinking alcohol, and he submits that the record in this case supports his position on the issue and not that of Plaintiffs. Every officer, even those that admitted to consuming alcohol themselves, testified that Officer Flake does not drink alcohol ever. Not a single person witnessed Officer Flake consume alcohol. The only evidence Plaintiffs offered was testimony from McDonald, who was admittedly intoxicated at the time, that he smelled alcohol on Officer Flake's breath from five (5) feet away.

Apt. Flake's Reply Br. at 20. This is exactly the type of factual dispute over which we have no interlocutory appellate jurisdiction. *See*, *e.g.*, *Ortiz*, 562 U.S. at 190; *Behrens*, 516 U.S. at 313. And this is typical of both Flake's and the City's arguments in their briefs in this appeal.

Rather than dismiss the appeal outright, however, we will instead discard the fact-based or "evidence sufficiency" portion of the arguments—that is, any challenge to the district court's view of the facts or its associated inferences—and exercise the jurisdiction we do have to reconsider the district court's legal determinations, based on the plaintiffs' version of the facts and the inferences as articulated by the district court. *See Estate of Carter*, 408 F.3d at 310.

---

[2] The only accusation that Officer Flake purports to concede, or acknowledge, is the accusation about the "snow bunnies" racial slur, and that he does reluctantly and in order to raise a misleading counter-argument. To wit:

> Officer Flake has at all times denied that he used the racial slur 'snow bunnies' in reference to the women accompanying the Plaintiffs that night. However even accepting such an allegation for the purposes of summary judgment as well as this subsequent appeal, Officer Flake maintains that such conduct, the use of a racial slur, does not in and of itself constitute a constitution violation.

Apt. Flake's Br. at 36. But the plaintiffs did *not* assert and the district court *did not even suggest* that the racial slur "in and of itself constitute[s] a constitution violation." Hence, that argument is irrelevant to the actual analysis.

**C.**

The plaintiffs have asserted three rights (i.e., three constitutional violations) in this case. First, they had a right to be free from arrest without probable cause. *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009). Second, they had a right to be free from "excessive force during an arrest, investigatory stop, or other 'seizure' of [their] person." *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009). And, third, they had a right to be free from one officer's knowing and willful permission for or encouragement of other officers to inflict excessive force upon them. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Furthermore, all three of these rights were clearly established as of July 4, 2011, the night of the events at issue here.

In finding a "genuine issue of material fact" (i.e., deciding that the plaintiffs had produced sufficient "evidence on which [a] jury could reasonably find for the[m]," *see Anderson*, 477 U.S. at 252), the district court identified certain facts and drew certain inferences. According to that version of the facts, at approximately 3:00 a.m., the plaintiffs and four female companions were in front of the Memphis Police EDU precinct when a man approached them on foot, ordered them to leave, and made an inflammatory racial slur. This man had alcohol on his breath, was not wearing a police uniform or badge, and did not identify himself as a police officer. Plaintiff McDonald responded, "Who the fuck are you?" but the plaintiffs' group nonetheless crossed the street and walked away without awaiting a response. But the man did respond: he yelled, "I'm going to show y'all who I am," and "blindsided" McDonald, kneeing him in the back as another man joined in. As it turned out, the instigator was off-duty Memphis Police Officer Marico Flake, who had been drinking alcohol with other off-duty police officers at the EDU precinct and, therefore, knew that other (alcohol-impaired) officers were present nearby and would likely assist him. These officers engaged in the physical assault on the plaintiffs, shouting, "Stop resisting arrest!" while punching, kicking, and striking the plaintiffs with batons or flashlights, causing injuries that left each plaintiff with over $7,000 in medical bills.

Officer Flake denies all of this and insists on his own, opposite version of events (e.g., he did *not* make any racial slur; he did *not* drink any alcohol; he *was* wearing police uniform clothing; his badge *was* visible; he *did* immediately identify himself as a police officer; he did *not* assault anyone; McDonald was about to attack him without provocation before another

officer initiated contact; and Flake was unaware that there was any alcohol present at the precinct or that other officers had been drinking).  As the district court explained—clearly, thoroughly, and repeatedly—deciding between these two versions is a task for the jury, not for the district court on summary judgment or for this court on appeal.

Instead, the district court properly accepted the plaintiffs' record-supported evidence to decide the motion as a matter of law and we do likewise, adopting for purposes of this appeal the district court's determination of the facts and deciding only the remaining questions of law before us here.  *See Estate of Carter*, 408 F.3d at 310.  Specifically, since we have already determined that the rights the plaintiffs are claiming here were clearly established at the time of the incident, we must now decide whether Officer Flake's conduct, on these facts, violated those rights.  We conclude that it did.  On these facts, Officer Flake led a group of alcohol-impaired officers in an attack on the unsuspecting plaintiffs, in violation of *Turner*, 119 F.3d at 429; inflicted excessive force on these subdued plaintiffs during this police encounter and seizure, in violation of *Chappell*, 585 F.3d at 908; and ultimately arrested these battered plaintiffs without probable cause, in violation of *Everson*, 556 F.3d at 500.  On this evidence, a jury could reasonably find for the plaintiffs.

Under this analysis, the decision is obvious.  We AFFIRM the district court's denial of Officer Flake's motion for summary judgment on the basis of qualified immunity.

### III.

The plaintiffs charged the City of Memphis with municipal liability on the basis that an official policy, or tolerating of a custom, led to the violation of their constitutional rights.  *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).  Specifically, the plaintiffs allege that the long-standing policy or custom of "Choir Practice" (in which police officers consume alcohol at the precinct), for which no officer has ever been disciplined, demonstrates deliberate indifference or failure to supervise.  The district court denied summary judgment on the basis "that there are too many questions of fact that have yet to be resolved in this case."  R.114.

The City appealed and the plaintiffs argued that we lack appellate jurisdiction.  Because this was an ordinary denial of summary judgment, not a denial of qualified immunity, even a

purely legal issue is not final for purposes of appellate jurisdiction. *See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008). But the City urges us to decide it under the authority of our pendent appellate jurisdiction. *See Hidden Vill., LLC v. City of Lakewood*, 734 F.3d 519, 524 (6th Cir. 2013).

"Pendent appellate jurisdiction *may* be exercised only when the immunity issues absolutely cannot be resolved without addressing the nonappealable collateral issues." *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 752 (6th Cir. 2015) (editorial marks omitted) (quoting *Archie v. Lanier*, 95 F.3d 438, 443 (6th Cir. 1996)); *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998) (emphasizing that "pendent appellate jurisdiction is not meant to be loosely applied as a matter of discretion; rather, such jurisdiction only may be exercised when the appealable issue at hand cannot be resolved without addressing the nonappealable collateral issue"). Such is not the case here.

As demonstrated in the foregoing section, the appealable issue here (whether Officer Flake's conduct violated plaintiffs' clearly established rights) is readily resolved without consideration of the existence or contours of the alleged policy or custom that underlies the claim of municipal liability. Moreover, the City's core argument on the merits of its appeal demonstrates fully the independence or unrelatedness of these issues: the City insists that the plaintiffs cannot prove municipal liability *even if* they prove that Officer Flake violated their rights as alleged.

Consequently, we may not extend pendent appellate jurisdiction to this issue. *See Baker v. Union Twp.*, 587 F. App'x 229, 237 (6th Cir. 2014) (explaining that "there is no 'pendent appellate jurisdiction' for third parties [merely] trying to piggyback on an appeal challenging a district court's denial of qualified immunity at the summary judgment stage").

**IV.**

Finally, the plaintiffs move for sanctions, in the form of costs incurred defending these appeals, on the basis that these appeals were knowingly frivolous and taken in bad faith. "If a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "An appeal is frivolous if it is obviously

without merit and is prosecuted for delay, harassment, or other improper purposes." *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013) (citation and quotation marks omitted).

As the plaintiffs point out, Officer Flake's appeal was solely a fact-based challenge to the plaintiffs' evidence and the district court's findings, which was both contrary to settled law and in flagrant disregard of the district court's direct admonition that Flake must accept the plaintiffs' version of the facts in order to raise a justiciable appeal. Despite his protests in his response filing, Flake cannot overcome this problem. His appeal was "obviously without merit."

The City claims to base its right to appeal on pendent appellate jurisdiction but, even acknowledging the controlling law (i.e., that the appealable issue must necessarily depend on the outcome of the pendent issue, otherwise referred to as being "inextricably intertwined"), the City made no such argument. In fact, the City's argument demonstrated that the issues were not interdependent. In its response to the motion, the City asserts that the appeals are interdependent because we could make a fact determination that Officer Flake did *not* drink any alcohol (despite the plaintiffs' evidence and the district court's ruling), which would then allow both defendant-appellants to prevail. But that theory is untenable here. Rather, at this stage of the proceedings, there was no reasonable claim of pendent appellate jurisdiction. This appeal was "obviously without merit."

The unmistakable futility of these appeals is compelling. *See WSM, Inc. v. Tenn. Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983) ("Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal."). This is even more so given the plaintiffs' motion in the district court and the court's resulting order, which expressly put the defendants on notice that they must accept the plaintiffs' version of the facts and argue only legal issues. *See Bailey v. Columbus Bar Ass'n*, 25 F. App'x. 225, 229 (6th Cir. 2001). This gross futility and the defendants' disregard for the warning necessarily influences our view of whether the defendants intended "delay, harassment, or other improper purposes," *Bridgeport Music*, 714 F.3d at 944.

In suggesting that the true purpose was delay, the plaintiffs point out that Officer Flake engaged in over two years of discovery before filing his motion for qualified immunity and then filed the appeal only days before trial was scheduled to begin. The City filed its appeal after that

and only after the district court had denied its motion to continue trial to a later date. The district court itself expressed that it was "disturbed" and "troubled" by this timing, suggesting that it suspected the defendants of improper gamesmanship. The defendants respond, correctly, that they filed their appeals within days of the district court's order denying their motions.

In *Yates*, 941 F.2d at 448, we warned that, "unfortunately," defendants could employ these interlocutory appeals from the denial of qualified immunity "for the sole purpose of delaying trial," "often to the disadvantage of the plaintiff." Specifically, when "disappointed by the denial of a continuance, [such defendants] may help themselves to a postponement by lodging a notice of appeal." *Id.* (citation and quotation marks omitted). By design, or merely as a result, "[d]efendants may defeat just claims by making [the] suit unbearably expensive or indefinitely putting off the trial." *Id.* at 449 (citation and quotation marks omitted).

Here, the defendants argued the facts and evidence, in complete disregard of the law and the district court's warnings, thus ensuring that they had no chance of success but nonetheless obtaining the postponement of trial that the district court had denied them, while also causing the plaintiffs unnecessary effort and expense in responding to them. *See Bailey*, 25 F. App'x. at 229. This was also a waste of judicial resources. *See Bridgeport Music*, 714 F.3d at 944.

Because these appeals were so clearly futile and apparently prosecuted for improper purposes, we conclude that sanctions are warranted. *See Kreps v. Pesina*, 202 F.3d 268 (6th Cir. 1999). Therefore, pursuant to our authority under Federal Rule of Appellate Procedure 38, we hereby sanction Officer Flake in the amount of $1500. We further sanction the City in the amount of $1500. These sanctions are to offset some of the plaintiffs' appellate attorney's fees and costs, to compensate the plaintiffs, in part, for defending this frivolous appeal.

**V.**

For the foregoing reasons, we AFFIRM the judgment of the district court denying Officer Flake's claim of qualified immunity. We DISMISS the City's appeal for lack of jurisdiction. And we GRANT the plaintiffs' motion for sanctions—in the amount of $1500 from each appellant payable jointly to the plaintiffs—on the basis that these defendant-appellants have filed and pursued a knowingly frivolous appeal in bad faith, causing harm to the plaintiffs.