NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  18a0310n.06

CASE NO. 17-5918

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MATHIS & SONS, INC., *et al.*, | ) | **FILED** |
|  | ) | Jun 22, 2018 |
| *Plaintiffs-Appellees*, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| COMMONWEALTH OF KENTUCKY | ) | UNITED STATES DISTRICT |
| TRANSPORTATION CABINET, *et al.*, | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF KENTUCKY |
| *Defendants-Appellants*. | ) |  |
|  | ) |  |

Before:  BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  In this interlocutory appeal from the denial of a motion for summary judgment based on qualified immunity, the defendants contend (among other things) that the plaintiffs' right was not clearly established.  We AFFIRM.

**I.**

Mathis & Sons, Inc. is a construction company.  Its president, plaintiff Maureen Mathis, is an African-American woman; her two adult sons are African-American men.  In 2003, the Kentucky Transportation Cabinet (KYTC) certified Mathis & Sons as a disadvantaged business enterprise (DBE) for purposes of minority bidding on federally funded construction projects.

In April 2013, Mathis & Sons submitted a request to the KYTC's Office of Civil Rights and Small Business Development, seeking to add certain North American Industry Classification System (NAICS) code designations to its DBE certification, so that it could also offer consulting services.  As Mathis & Sons informed KYTC, it needed the codes to finalize a large contract.

KYTC assigned Reed Hampton as the "lead investigator" for the request and assigned defendant Shella Eagle to assist him. As the lead investigator, Hampton's role was to submit a recommendation to the KYTC Certification Committee, which ordinarily accepts the lead investigator's recommendation. Hampton had been a KYTC investigator for 13 years.

Based on the investigation, Hampton found that Mathis & Sons was qualified for the NAICS code certifications, and he thought that Eagle agreed. Hampton drafted a report recommending the approval of the NAICS codes as well as renewal of the DBE certification, and told KYTC staff of that recommendation. Hampton then left on medical leave for several weeks.

While Hampton was out on leave, defendant Tyra Redus—the Executive Director of KYTC's Office of Civil Rights and Small Business Development—told Eagle to draft a different recommendation: a recommendation advising the Committee to deny the NAICS code certifications and also to de-certify Mathis & Sons from the DBE program. According to Redus and defendant Melvin Bynes, a KYTC branch manager, the basis for this new recommendation was their belief that Maureen Mathis did not actually control Mathis & Sons because her sons had answered most of the investigators' questions during the on-site interview. But even if that belief were correct—though it was later proven not to be—it is noteworthy that the sons, like Maureen, are African American, so the business was properly certified as a DBE either way.

Eagle submitted the recommendation for de-certification to the Committee, as instructed, but listed Hampton as the investigator, making it appear as though it was his recommendation. Hampton did not know that they had changed his recommendation. If she is to be believed, Eagle claims that she was unaware of Hampton's recommendation for approval.

In July 2013, the Committee met to consider Mathis & Sons' request. Maureen Mathis testified about her control of the company. An outraged Reed Hampton appeared at the meeting, despite his still being out on medical leave (recovering from surgery), and argued for both the

approval of the NAICS codes and recertification of Mathis & Sons in the DBE program. The Committee requested additional information and deferred a decision until its August meeting, at which it approved both the requested NAICS codes and the DBE recertification. But by that time, because of the delay, Mathis & Sons had been replaced on the large contract.

Hampton filed internal complaints with KYTC, alleging that the DBE program treated Caucasian applicants more favorably than African-American applicants, and providing several specific examples of the alleged preferential treatment. The Federal Highway Administration's Kentucky Division Office (FHA) investigated Hampton's complaint and though it found "no evidence that the KYTC implemented its DBE Program such that it discriminated against older, African American-owned applicants through disparate treatment" or "through disparate impact," it did find that "there was a disparity between the rates that African American-owned firms were terminated or withdrawn compared to white-owned firms," as happened here. Despite this finding, the report concluded that "the Investigator could not draw a conclusion about the disparity" and merely urged "KYTC to investigate the potential cause for this disparity."

Mathis & Sons sued KYTC, Eagle, Redus, and Bynes, alleging racial discrimination in violation of Title VI and 42 U.S.C. § 1983, and raising state-law claims of negligence and bad faith. Hampton provided an affidavit to reassert and authenticate the facts and accusations that he had made in his internal complaint. The defendants moved for summary judgment on several bases, including claims of qualified immunity and sovereign immunity.

The district court granted sovereign immunity to KYTC and the individual defendants in their official capacities. *Mathis & Sons, Inc. v. Ky. Transp. Cabinet*, 2017 WL 3045125, at *9 (W.D. Ky. July 18, 2017). But the court found that the "right to be free from racial discrimination . . . was clearly established," *id*. at *10, and that Mathis had produced sufficient evidence that a reasonable juror could find that Eagle, Redus, and Bynes "were motivated by discriminatory intent

3

or purpose" when they recommended denial and decertification, *id*. This evidence included: (1) Hampton's affidavit and complaint asserting specific incidents of differing treatment based on race; (2) the independent FHA investigation report findings of select disparity; (3) the "doubt [about] KYTC's stated reason for seeking termination of the [] DBE certification" (i.e., that the company somehow wasn't a minority business because it was run by the African-American sons rather than their African-American mother); and (4) the otherwise inexplicable act of submitting the recommendation to the Committee as though it had been Hampton's recommendation. *Id.* at *10-11. The court framed these as material questions of fact and denied the individual defendants' claims of qualified immunity.

## II.

On appeal, Eagle, Redus, and Bynes raise four claims, including three that are untenable and do not warrant reanimation here, namely that: (1) Mathis did not prove injury, claiming that the plaintiffs "failed to demonstrate that they have suffered any constitutional deprivation so as to implicate the protections of Section 1983," Apt. Br. at 9, 11; (2) Mathis "failed to articulate any viable Kentucky State Law claim" or "actionable claim of negligence under Kentucky law," Apt. Br. at 9, 13; and (3) defendants' "conduct was at all times discretionary in nature," so they were "entitled to governmental immunity under Kentucky State Law," Apt. Br. at 9, 13. Regarding the first claim, we conclude after careful review of the record, the controlling law, and these arguments, that the district court set out the applicable law and correctly applied that law to the facts. Further discussion by this court would serve no useful purpose.

The other two are state-law claims over which we lack jurisdiction in this interlocutory appeal based on federal qualified immunity. *See McDonald v. Flake*, 814 F.3d 804, 816 (6th Cir. 2016) (explaining that we have pendent appellate jurisdiction only if the federal qualified immunity issues cannot be resolved without addressing the nonappealable collateral issues).

The defendants' fourth claim is that "there [wa]s no 'clearly established' law so as to put a reasonable public official on notice that the conduct in question here would be constitutionally violative." Apt. Br. at 9, 12-13. Basically, the defendants' argument is that they were duty bound to pursue their legitimate concerns that Mathis & Sons was not actually eligible for DBE status and they had no way of knowing that doing so would violate the Constitution.

On the one hand, this is an improper fact-based challenge to the district court's finding that Mathis & Sons produced sufficient evidence that a jury could find that the "concerns" were a fabricated and implausible rationalization for racial discrimination. On interlocutory appeal from the denial of qualified immunity, as here, we lack jurisdiction to "decide an appeal challenging the district court's determination of 'evidence sufficiency.'" *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

On the other hand, this is a purely legal challenge—over which we have jurisdiction, *see id.* at 608-11—in which the defendants are claiming that the law did not clearly proscribe their specific conduct. We may review this based on Mathis & Son's proffered evidence and the inferences the district court drew from that evidence, *see id.* at 609 (explaining that "a defendant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal"), namely, that the alleged "concerns" were actually a fabrication used as cover for the violation of Mathis & Sons' rights, concocted by these defendants, who "were motivated by discriminatory intent or purpose," *Mathis & Sons*, 2017 WL 3045125 at *10.

The defendants argue that, even so, Mathis & Sons has failed to identify any precedent directly on point to demonstrate that this conduct was contrary to "clearly established law," as is required under the second prong of the qualified immunity analysis. *See White v. Pauly*, 580 U.S. --, 137 S.Ct. 548, 552 (2017). "But general statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already

identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (quotation marks and editorial marks omitted) (quoted with approval in *White*, 137 S.Ct. at 552). As we have elsewhere opined:

> Some personal liberties are so fundamental . . . as to need no specific explication in our Constitution in order to ensure their protection against government invasion. [For example,] [s]urreptitiously videotaping the plaintiffs in various states of undress is plainly among them. . . . [A] person of ordinary common sense . . . would know without need for specific instruction from a federal court, that . . . [surreptitiously videotaping naked teenagers would violate their rights].

*Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 499 (6th Cir. 2008).

The question here, then, is whether the established law forbidding racial discrimination would "apply with obvious clarity" to the defendants' acts, if "motivated by discriminatory intent or purpose" and intended to harm Mathis & Sons' business. That is, would a KYTC employee of ordinary common sense know, without need for specific instruction from a federal court, that fabricating alleged concerns and falsifying Reed Hampton's recommendation, due to racial animus, would violate Mathis & Son's rights? We are confident that he or she would know.

## III.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.