NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0398n.06

No. 23-3383/3440

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 01, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| RUBY HICKS, as administrator of the estate of Quandavier K. Hicks, | ) ) ) | |
| Plaintiff-Appellee / Cross-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| DORIS A. SCOTT; JUSTIN T. MOORE; BENJAMIN M. SCHNEIDER, individually and in their official capacities as employees of the City of Cincinnati, Ohio; CITY OF CINCINNATI, OHIO, | ) ) ) ) ) ) | OPINION |
| Defendants-Appellants / Cross-Appellees. | ) ) | |

Before: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In this 42 U.S.C. § 1983 action arising out of the fatal shooting of Quandavier Hicks ("Quandavier"), the district court initially granted defendants' motion for summary judgment on the basis of qualified immunity with respect to plaintiff Ruby Hicks's ("Hicks"), administrator of Quandavier's estate, unlawful entry claim. Hicks appealed that initial grant of qualified immunity, and we reversed. *Hicks v. Scott*, 958 F.3d 421, 427 (6th Cir. 2020).[1] On remand, the district court denied defendants' motion for summary judgment, and defendants appealed, arguing that they were wrongfully denied qualified and statutory immunity. According to defendants, because they are entitled to qualified immunity,

---

[1] Because the factual background of this case is set forth in our prior reported opinion, we do not repeat it here.

they are also entitled to statutory immunity on the state wrongful death claim under Ohio Revised Code § 2744.03(A).

We affirm.

I.

We begin with the issue of qualified immunity. *See Hopper v. Plummer*, 887 F.3d 744, 758–59 (6th Cir. 2018) (resolving qualified immunity before turning to statutory immunity issue). This court reviews a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds de novo. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013). Summary judgment is only proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of this interlocutory appeal of the denial of qualified immunity, we must view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in plaintiff's favor. *See McDonald v. Flake*, 814 F.3d 804, 814 (6th Cir. 2016).

Although this court ordinarily lacks jurisdiction over interlocutory appeals, we may review a district court's denial of a claim of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Our review is confined to the "purely legal" question of "whether the facts alleged . . . support a claim of violation of clearly established law." *Id.* at 528 n. 9. We may not review the district court's determination of what facts a party may be able to prove at trial, *McDonald*, 814 F.3d at 812 (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)), or the district court's summary judgment ruling on qualified immunity "insofar as that order determines whether the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319–20. In particular, we may not decide an appeal challenging the district court's determination of "evidence sufficiency," *id.* at 313, such as the district court's acceptance of "what [actually] occurred[ ] or

why an action was taken or omitted," *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), or what evidence "could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996).

Nevertheless, when a defendant improperly makes disputed fact-based arguments, instead of dismissing the appeal outright, we may "discard the fact-based or 'evidence sufficiency' portion of [the defendant's] arguments—that is, any challenge to the district court's view of the facts or its associated inferences—and exercise the jurisdiction we do have to reconsider the district court's legal determinations based on the plaintiffs' version of the facts and the inferences as articulated by the district court." *McDonald*, 814 F.3d at 814. And when legal and factual issues are intertwined, we must "separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014) (quoting *Johnson*, 515 U.S. at 319).

In short, for purposes of this appeal, we are limited to reviewing "whether the plaintiff's facts, taken at their best, show that the defendant[s] violated clearly established law." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013); *see also Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) ("[T]he defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case."). When reviewing the denial of the defendants' claim of immunity on summary judgment, we "need not consider the correctness of the plaintiff's version of the facts." *Mitchell*, 472 U.S. at 528.

Having established that we may exercise jurisdiction over defendants' claim to qualified immunity, we proceed to the merits of those arguments.

II.

A.

A plaintiff who brings a § 1983 action bears the burden of overcoming the qualified immunity defense. *Quigley*, 707 F.3d at 681. At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id.* at 680. In so doing, the plaintiff must, at a minimum, "present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law," *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir. 1994)—that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the district court finds that the plaintiff's evidence could support a jury's finding that the defendant violated a clearly established right, the court must deny summary judgment. *DiLuzio*, 796 F.3d at 609.

1.

Here, a significant portion of defendants' arguments on appeal centers on additional discovery conducted after this court's remand. According to them, new evidence has uncovered a "substantially different" set of facts based on the singular testimony of Quandavier's second floor tenant Valerie Thomas. According to defendants, these newly discovered facts demonstrate that Quandavier resided in a "multi-unit" setting and, therefore, Quandavier lacked a legitimate expectation of privacy. Defendants maintain that the shared nature of the exterior entry door, second floor hallway, stairway, and foyer undermine any objectively reasonable expectation of privacy Quandavier could have had in those areas.

Defendants point to decidedly factual matters and draw various inferences from the facts gathered from additional discovery, asserting that the defendant officers knocked on Valerie Thomas's apartment door, and not Quandavier's, that Thomas purchased her own individual

renter's insurance, and that Quandavier only locked the door leading to his third floor unit instead of the exterior door downstairs. Defendants outline additional factual assertions, including that Thomas and Quandavier each had permission from the first floor tenant to use his the tenant's bathroom, that Thomas shared the kitchen area with Quandavier on the second floor, and that Quantavier had lost his keys to the exterior entry door and did not regularly lock this door. The parties also dispute whether the exterior door was ajar when defendant Officer Scott pushed it open, and whether Quandavier and Thomas kept their second floor doors locked.

These arguments address questions of "evidence sufficiency" and involve direct challenges to the district court's determination of what evidence could support a jury's finding about whether a Fourth Amendment violation had occurred. *See Johnson*, 515 U.S. at 313; *Behrens*, 516 U.S. at 313. As explained, we lack jurisdiction over defendants' fundamentally fact-based arguments. *See McDonald*, 814 F.3d at 814; *Berryman*, 150 F.3d at 564–65 ("Once a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial."). As much as defendants resist the district court's determination about what the disputed facts show and recast the facts in the light most favorable to them, defendants "may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal."[2] *McDonald*, 814 F.3d at 813 (citation omitted). Disregarding the defendants' fact-based challenges, as we must, we do not disturb the district

---

[2] The only exception to this legal-factual distinction is "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false." *Moldowan v. City of Warren*, 578 F.3d 351, 370–71 (6th Cir.2009) (citation omitted); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (rejecting the trial court's finding of a genuine issue of material fact because in light of clear video footage, the plaintiff's version of the facts was "so utterly discredited by the record that no reasonable jury could have believed him"). The district court's findings here do not come close to crossing that line.

court's record-supported determination that genuine issues of material fact exist to preclude summary judgment on defendants' claim for qualified immunity.

2.

Turning to whether Hicks's version of the facts, at its best, shows that the defendants violated clearly established law, we address defendants' principal argument—and only argument properly before this court—that Quantavier had no reasonable expectation of privacy in the areas of the building that he shared with his co-tenant Thomas. According to the district court's order, "even if Thomas's testimony were to support a factual finding that the third floor and the second floor were two separate units, it does not change the legal analysis set forth by the Sixth Circuit in this case." No. 1:16-CV-0021-MRB, DE 97, Order, Page ID 3386. We agree because, under clearly established law, the shared nature of a private dwelling's common space with one other tenant in a duplex does not eliminate Fourth Amendment protections against warrantless entries. *See United States v. King*, 227 F.3d 732, 750 (6th Cir. 2000).

We have long held that tenants of multi-occupancy structures have a reasonable expectation of privacy in "common areas . . . not open to the general public." *United States v. Carriger*, 541 F.2d 545, 549 (6th Cir. 1976); *see also United States v. Dillard*, 438 F.3d 675, 683 (6th Cir. 2006) (recognizing that *Carriger* remains "controlling in this circuit"). In *Carriger*, we held that a tenant of a twelve-unit apartment building has "a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry"—even if "he has no right to exclude from the common hallways those who enter lawfully." 541 F.2d at 550. If a tenant in a large twelve-unit apartment building has a reasonable expectation of privacy in a common area leading to multiple units, then the same logic applies to smaller two-person duplexes with equal—if not greater—force. *See id.* at 549–52. Therefore,

defendants cannot credibly allege that the right to be free from warrantless entry into a small duplex and its curtilage was unclear at the time of Quandavier's death.

Subsequent case law places Fourth Amendment protections against warrantless searches in the common areas of smaller duplexes "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As *United States v. King* makes explicit, "the nature of the living arrangements of a duplex, as opposed to a multi-unit apartment building, affords the tenant of the duplex a greater expectation of privacy in areas the tenant of the multi-unit apartment building would not enjoy, because in the case of a duplex, access to such areas is limited to the duplex's tenants and landlord." 227 F.3d at 750. Even though the duplex in *King* was shared by seven other tenants, we held that the resident enjoyed a reasonable expectation of privacy in the shared basement of the duplex and that "this expectation is one which would be recognized by society." *Id.* We find no reason to depart from this holding.

It is only when a tenant should expect that members of the general public will regularly pass through a common space that she loses her reasonable expectation of privacy in that space. *Dillard*, 438 F.3d at 684. As we explained in *Dillard*, if a tenant leaves the door to a common hallway unlocked and "ajar," and that hallway leads to the entrance of multiple units, it is not reasonable for the tenant to expect that the area will remain private. *Id.* at 682–84. But *Dillard* does not disturb the otherwise well-settled rule that "duplex tenants have a greater expectation of privacy than tenants of a large multi-unit apartment building." *Dillard*, 438 F.3d at 684.

Here, viewing the evidence in a light most favorable to Hicks, the district court found that a reasonable jury could find that the second floor hallway is an area in which Quandavier had a reasonable expectation of privacy. The district court did not err in finding that Hicks's alleged facts support a claim of a violation of clearly established law, as reflected in *Carriger* and *King*.

Accordingly, the district court properly held that defendants violated Quandavier's clearly established Fourth Amendment right to be free from unlawful entry into his home. We therefore affirm the district court's denial of defendants' motion for summary judgment for qualified immunity on Hicks's unlawful entry claim.

We also affirm the district court's denial of defendants' motion for summary judgment on defendants' state law immunity claim under Ohio Revised Code § 2744.03(A). Because the district court properly denied defendants immunity from Hicks's unlawful entry claim, statutory immunity is likewise unavailable at this stage for Hicks's wrongful death claim insofar as that claim is based on the same disputed material fact—defendants' unlawful entry into Quandavier's apartment. *See Wilson v. Gregory*, 3 F.4th 844, 860 (6th Cir. 2021) ("When federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, we may review the state-law immunity defense 'through the lens of the federal qualified immunity analysis.'" (citation omitted)).

B.

Hicks appeals the district court's decision granting summary judgment on her *Monell* claim against the city. We lack jurisdiction over Hicks's appeal because the district court's grant of summary judgment on the *Monell* claim is not a final decision for purposes of appeal, given that Hicks's cross appeal does not entail a claim "inextricably intertwined" with another claim properly before this court. *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 450 (6th Cir. 2022) (citation omitted).

Denials of summary judgment on issues of liability are not usually appealable to this court on an interlocutory basis because they are not "final decisions" over which we have jurisdiction. 28 U.S.C. § 1291. Nevertheless, "an appellate court can exercise pendent appellate jurisdiction on

a § 1983 claim alleging municipal liability where the municipality's motion for summary judgment is inextricably intertwined with the qualified immunity analysis properly before the Court." *Shumate*, 44 F.4th at 450 (citation omitted).

A *Monell* claim is "inextricably intertwined" with the qualified immunity analysis when "the resolution of the qualified immunity appeal necessarily resolves the *Monell* appeal," *King v. City of Rockford, Mich.*, 97 F.4th 379, 399 (6th Cir. 2024), e.g., when a court's finding that there was no constitutional violation in the qualified immunity context prevents a plaintiff from showing that a "policy" caused a "specific constitutional violation in the plaintiff's own case." *Farris*, 96 F.4th at 968. But when a court finds that there is a constitutional violation, "the question of municipal liability turns not simply on the actions of the individual state actors, but rather on the separate question of whether the violation may be attributed to a municipal policy or failure to train." *King v. City of Rockford, Michigan*, 97 F.4th 379, 399 (6th Cir. 2024) (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 410–11 (6th Cir. 2008)).

Here, because the district court has determined that a jury could reasonably find that defendants violated Quandavier's Fourth Amendment right to be free from unlawful entry into his home, and because the separate question of whether the constitutional violation can be attributed to the city's official policy or failure to train is not necessarily resolved as a result, we lack pendent jurisdiction over Hicks's appeal under *Monell*.

III.

For the reasons stated above, we affirm the district court's denial of qualified immunity to defendants on the unlawful entry claim. Similarly, we affirm the district court's denial of statutory immunity to defendants for Hicks's wrongful death claim under Ohio state law. Finally, we dismiss Hicks's municipal liability appeal under *Monell* for lack of jurisdiction.