NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0473n.06
Filed: July 2, 2007

No. 06-6198

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HENRY CAMPBELL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CLAYTON STAMPER and JEREMY | ) | EASTERN DISTRICT OF KENTUCKY |
| LEE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  GIBBONS and COOK, Circuit Judges; CLELAND, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff-appellant Henry Campbell filed the

instant civil rights action alleging that in subjecting him to an investigatory stop, defendants violated

his Fourth Amendment right to be free from unreasonable search or seizure.  The district court

granted summary judgment in favor of the defendants, finding their investigatory stop supported by

"reasonable suspicion" as required by *Terry v. Ohio*, 392 U.S. 1 (1968).  For the reasons that follow,

we affirm.

I.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

The relevant facts are not disputed by the parties. On October 3, 2004, an unidentified 911 caller notified the Kentucky State Police that a man was on the side of the road pointing a .22 rifle at passing motorists. Defendants-appellees Clayton Stamper and Jeremy Lee, Kentucky State Troopers, were dispatched to investigate the complaint. While canvassing the area believed to be the area identified by the caller, Stamper and Lee observed Campbell leaning on a guardrail next to the highway. They also noticed a firearm leaning against the guardrail and positioned near Campbell. They approached Campbell with their weapons drawn and ordered him to move away from his weapon and lay face down on the pavement. They subsequently frisked him and placed him in handcuffs. After questioning Campbell, Stamper and Lee determined that he had not been involved in any criminal activity and let him go.

Campbell filed suit in federal district court under 42 U.S.C. § 1983, alleging that Stamper and Lee violated his rights under the Fourth Amendment. On the parties' cross motions for summary judgment, the district court found that (1) Stamper and Lee possessed sufficient facts to justify their brief investigatory stop of Campbell and (2) the manner by which they conducted the *Terry* stop was reasonable. Accordingly, the district court granted summary judgment in favor of Stamper and Lee. Campbell timely appealed.

II.

This court reviews the grant of summary judgment *de novo*. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment will be affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If, on the other hand, "a reasonable jury could return a verdict for the

non-moving party," summary judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision, this court draws all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Title 42, section 1983 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of his or her federally guaranteed constitutional rights. In a § 1983 action in which a defendant claims the protection of qualified immunity, such as the one here under review, the court must follow a two-step process in evaluating that defendant's claim of immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under this analytical framework, a court must first determine whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has violated the plaintiff's constitutional rights. *Id.* If the facts would support a finding of a constitutional violation, the court must also find that the conduct of the defendant violated "clearly established" constitutional rights. *Id.* If, however, the plaintiff is unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant. *See id.*

The Fourth Amendment guarantees that individuals will be free from unreasonable searches and seizures, including brief investigatory stops that fall short of arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Police officers may make investigatory stops consistent with the Fourth Amendment so long as they have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). In determining whether a stop is supported by reasonable suspicion, a reviewing court must examine the "totality of the circumstances" presented in a particular case and satisfy itself

that the officer had a "particularized and objective basis" for his or her suspicion of criminal activity. *Arvizu*, 534 U.S. at 273; *see also United States v. Cohen*, 481 F.3d 896, 899 (6th Cir. 2007).

III.

We must first determine whether, on these undisputed facts, Campbell has established that Stamper's and Lee's conduct violated his constitutionally protected rights. The parties agree that the critical issue in resolving this inquiry is whether the facts known to Stamper and Lee prior to their investigatory stop of Campbell were sufficient to establish reasonable suspicion under *Terry v. Ohio*. At the time of the stop, Stamper and Lee knew that (1) an anonymous 911 caller notified police that a man was standing next to the highway and pointing a firearm at passing motorists; (2) a man later identified as Campbell was observed in the area identified by the tipster; (3) Campbell was leaning on a guardrail next the highway; and (4) a firearm, also leaning against the guardrail, was located next to Campbell. On these facts, there can be little doubt that Stamper and Lee had reasonable suspicion to support their investigatory stop. They had every reason to suspect that Campbell could be the individual identified by the 911 caller. Campbell was resting by the side of the road, had a firearm in his possession, and was located in the area identified by the 911 caller. The record clearly demonstrates that Stamper and Lee possessed "reasonable suspicion supported by articulable facts" that Campbell was the individual identified by the 911 caller.

Campbell has never disputed the facts upon which the officers relied in making the investigatory stop. Rather, both before the district court and here on appeal, Campbell relies on *Florida v. J.L.*, 529 U.S. 266 (2000), and *Alabama v. White*, 496 U.S. 325 (1990), in arguing that an anonymous tip, in and of itself, will not suffice to establish reasonable suspicion absent additional indicia of reliability. While not inaccurate, Campbell's argument oversimplifies the inquiry, ignoring

4

critical factual distinctions–identified by the district court–between this case and those upon which he relies.

In *J.L.*, the Supreme Court held that an anonymous tip containing only a general description of the appearance and location of a criminal suspect failed to establish reasonable suspicion to justify an investigatory stop. 529 U.S. at 272. The tipster stated that a black male in a plaid shirt was at a bus stop carrying a concealed weapon. *Id.* at 268. When the police officers arrived at the bus stop, they observed a black male in a plaid shirt, and after stopping and frisking that individual, they found that he was armed, confirming the statements of the informant. *Id.* at 268-69. In noting that the anonymous tip, in and of itself, was insufficient to justify a *Terry* stop, the Court observed,

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272. The Court rejected the government's argument that the ultimate accuracy of the anonymous tip justified a finding of reasonable suspicion, stating that "[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Id.* at 271.

Whereas the *J.L.* suspect was found in a relatively unremarkable and well-traveled location–a bus stop–Stamper and Lee came upon Campbell standing by the side of a public highway, where pedestrian traffic is hardly commonplace. Moreover, Stamper and Lee were able to observe Campbell's apparent possession of a firearm. Given the fact that Stamper and Lee were investigating the possibility that an unknown individual in Campbell's vicinity was endangering those traveling on

5

the highway by pointing a weapon at them, their suspicion that Campbell might have been that individual was supported by their observation of Campbell.

Campbell correctly notes that the present case is distinguishable from *Alabama v. White*, in which the Supreme Court held that an anonymous tip that accurately predicted the future behavior of the suspect was sufficient to establish reasonable suspicion. 496 U.S. at 332. This observation, however, does not bolster Campbell's position. Campbell seeks to transform *White*'s holding specifying a set of facts that *supports* a finding of reasonable suspicion into a mandate prescribing that which is *necessary* to establish reasonable suspicion. There is nothing in *White*'s language that would preclude a finding that the facts of this case support the conclusion that Stamper and Lee possessed reasonable suspicion prior to conducting the *Terry* stop. More importantly, as noted above, the Supreme Court has rejected any such formulaic approach to questions of reasonableness under the Fourth Amendment and directed reviewing courts to assess reasonable suspicion in light of the "totality of the circumstances" in a particular case. *Arvizu*, 534 U.S. at 273.

Whatever may be said of the reliability of anonymous tips generally, one would be hard pressed to argue that Stamper and Lee acted other than reasonably in making an investigatory stop of Campbell. That Stamper and Lee later determined that Campbell was not the individual identified by the 911 caller is of no moment. Stamper and Lee were able to observe Campbell and had every reason to believe that he was the subject of the anonymous tipster's complaint.

In fact, at oral argument, Campbell's counsel appeared to concede this point, agreeing that Stamper and Lee possessed sufficient facts to justify their investigatory stop. During argument, Campbell's counsel sought instead to challenge the manner in which the stop was conducted, claiming that the degree of force used by Stamper and Lee was unreasonable. Specifically,

6

Campbell's counsel argued that Stamper and Lee acted unreasonably in drawing their weapons and temporarily handcuffing him. While Campbell challenged the manner in which Stamper and Lee conducted the *Terry* stop before the district court, he did not preserve this issue by raising it in his briefing. A litigant's failure to raise or argue an issue in his or her briefing operates as an abandonment of that issue for purposes of appeal. *See United States v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007) (citing *United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006)).[1]

Even if we were to reach this argument, it is plainly meritless. As we have previously stated, "[d]uring a *Terry* stop, officers may draw their weapons or use handcuffs 'so long as circumstances warrant that precaution.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 309 (6th Cir. 2005) (quoting *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999)). In conducting a *Terry* stop, police officers may draw their weapons and use handcuffs without offending the Fourth Amendment if they reasonably believe that a suspect is armed and might pose a danger to them as they conduct their investigation. *Houston*, 174 F.3d at 814-15. The facts of this case demonstrate that Campbell was armed and suspected of having threatened other motorists with his weapon. Under the circumstances, it can hardly be said that Stamper and Lee acted unreasonably in drawing their weapons to ensure Campbell's compliance with their instructions and using handcuffs to restrain Campbell while they determined whether or not he posed any threat to them. Consequently, there is nothing in the record to support Campbell's claim that Stamper and Lee acted unreasonably. Because Stamper and Lee possessed reasonable suspicion to justify their investigatory stop and

---

[1]The position advocated at oral argument directly contradicts that argued in Campbell's brief. In his brief, Campbell stated that his appeal turns on a single question: "did the anonymous . . . tip give the troopers reasonable suspicion under *Terry v. Ohio* . . . [?] If the answer to this question is yes, then Mr. Campbell's rights have not been violated. If the answer is no, then he was the subject of an illegal detention, search[,] and seizure of his person. . . ."

7

because they did not conduct the stop in an unreasonable manner, we agree with the district court that Campbell has failed to establish that there was a violation of his constitutional rights. Accordingly, the district court correctly granted summary judgment to defendants.[2]

IV.

For the foregoing reasons, we affirm.

---

[2]The district court found, in the alternative, that even if the facts adduced by Campbell were sufficient to establish a constitutional violation, Stamper and Lee would be entitled to qualified immunity because any violation of Campbell's rights did not implicate his clearly established constitutional rights. Because we find no error in the district court's determination that there was no constitutional violation, we need not address this issue.