**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0087n.06

Case No. 17-4174

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROBERT KALVITZ, | ) | |
| | ) | **FILED**<br>Feb 21, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CITY OF CLEVELAND, | ) | OHIO |
| | ) | |
| Defendant, | ) | **OPINION** |
| | ) | |
| CHRISTOPHER D. RANDOLPH, Cleveland | ) | |
| Police Officer, JEFFREY J. FOLLMER, | ) | |
| Cleveland Police Officer, and STEVEN W. | ) | |
| KINAS, Cleveland Police Officer. | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Robert Kalvitz claims that the defendants, three Cleveland police officers, "beat, struck, and kicked" him in a one-sided altercation after he was knocked to the ground. They handcuffed him, threw him against a concrete wall, and told him he was under arrest. All this left Kalvitz with several medical issues, including a head injury, a broken cheekbone, and broken ribs. He responded with a suit against the officers and the city under 42 U.S.C. § 1983 for violating his Fourth Amendment rights. The officers moved for summary judgment—asserting qualified immunity as one of their defenses. When the district court denied the motion, they filed this interlocutory appeal. We affirm.

I.

Almost every important fact in this case is in dispute. The parties agree that Kalvitz got into a fight at the Zone Car Lounge in May 2014. Kalvitz, a retired police officer, was at the Lounge for the Police Memorial Commemoration—an annual event put on by the Cleveland Police Patrolman's Association. For some reason, he exchanged words with an officer from Detroit, which led to a physical altercation. Several people eventually carried him out of the bar in handcuffs.

Kalvitz says the verbal spar turned physical when several of the Detroit officer's friends "started to hit" him. Kalvitz Dec., R. 37-1, PageID 379. But he did not fight back. So when the group attacked him, Kalvitz ended up on the floor, lying on his back. That's when two of the three defendants showed up. Defendants Steven Kinas and Christopher Randolph appeared and identified themselves as Cleveland police officers. They took over the situation—but not to calm things down. Kalvitz claims that Kinas and Randolph "beat, struck, and kicked [him] while [he] was on the floor." *Id*. Then they rolled him over and handcuffed him to place him under arrest. At that point, Defendant Jeffrey Follmer—also a Cleveland police officer—appeared. The three officers carried Kalvitz up the stairs, banging him into the walls as they went, and took him outside. Once there, the officers threw Kalvitz into a concrete wall and onto the ground. He suffered several serious injuries as a result of the assault.

That's, at least, how Kalvitz tells it. The officers have a much different story. Each one claims that he was not aware of the altercation until after it happened. They were all off duty that night and, at most, bystanders. Kinas and Follmer were outside when Kalvitz got into the fight. They heard that someone pulled out a knife, but by the time they saw him, Kalvitz was in handcuffs and standing outside. Randolph was restocking the bar when the fight broke out. He saw a group

of people carrying someone—presumably Kalvitz—up the stairs. Then a bartender told him that someone pulled out a knife. By that time, Kalvitz was outside.

Their story might be accurate, but Kalvitz contests every detail of it. He sued the officers under § 1983 for using excessive force in violation of his Fourth Amendment rights. After discovery, the officers moved for summary judgment. They argued first that § 1983 does not apply because all three officers were off duty and acting as private citizens that night. But even if they were acting in their official capacity, they claimed protection under qualified immunity. The district court rejected both arguments, citing the many factual disputes precluding summary judgment. The officers then filed this interlocutory appeal, raising the same two issues for review.

II.

We must first address our jurisdiction. Before briefing the merits, Kalvitz moved to dismiss the appeal. He argued that the court does not have jurisdiction under *Mitchell v. Forsyth*, 472 U.S. 511 (1985), because the district court's ruling denying summary judgment "turn[ed] on the facts rather than the law." Mtn. to Dismiss at 4. We denied the motion at that time. The court has jurisdiction, we explained, if "the officers concede [the] operative facts alleged in Kalvitz's sworn declaration." Order Denying Mtn. to Dismiss at 2. Those facts include, for example, "that Randolph and Kinas beat, struck, and kicked [Kalvitz] while he was on the floor, and that after handcuffing him, all three defendants threw him against a concrete wall and to the ground." *Id*. But after seeing the officers' brief, Kalvitz raised the issue again.

When a district court denies qualified immunity, defendants can file an immediate—but limited—interlocutory appeal. *See McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir 2006). It is limited because we are not permitted to resolve fact-based challenges to the district court's decision. *McDonald v. Flake*, 814 F.3d 804, 812–13 (6th Cir. 2016). Instead, our

3

jurisdiction extends only to the "neat abstract issues of law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). We must accept the sufficiency of the plaintiff's evidence and decide whether it "would reasonably support a jury's finding that the defendant violated a clearly established right." *McDonald*, 814 F.3d at 812.

There is no question that the officers improperly challenge Kalvitz's factual allegations in their appeal. But our limited jurisdiction does not require dismissing every appeal that raises such factual disputes. When possible, we must "separate an appellant's reviewable challenges from its unreviewable." *Id.* at 813 (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 610 (6th Cir. 2015)). Often, the legal and factual issues in an appeal are "confused or entwined." *Id*. And in those cases, "we can 'ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.'" *Id.* (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)). That is possible here, where the officers argue that, "taking the facts in the light most favorable to the plaintiff, the District Court erred in denying the individual Defendants qualified immunity." Appellants' Br. at 23. We can answer that legal question while ignoring the officers' attempts at obfuscating the factual record below.

### III.

Turning to the merits, the officers seek refuge under qualified immunity—but only if we first deny their argument that they acted as private citizens during the altercation. That seems to have it backwards in a case where our jurisdiction only exists because of the qualified-immunity claim. So we begin with that issue.

A.

Qualified immunity shields public officials from suit under § 1983 unless their conduct violated clearly established constitutional rights. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). To overcome it, a plaintiff must demonstrate two things. First, that the official violated his constitutional rights. And second, that the violation was "clearly established at the time." *Id.* (internal quotation marks omitted). The effect of this two-pronged approach is that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

No person could reasonably debate whether the officers violated Kalvitz's clearly established constitutional rights if his version of the facts turns out true. The Fourth Amendment allows officers to use "reasonable" force when seizing an individual. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Figuring out whether the force crossed the constitutional line requires an objective analysis "in light of the facts and circumstances confronting" the officer. *Id.* (internal quotation marks omitted). Only objectively unreasonable force violates the Fourth Amendment.

To that end, officers cannot use heightened levels of force against an individual who is not resisting and poses no threat. *See Phelps v. Coy*, 286 F.3d 295, 301–02 (6th Cir. 2002); *Lawler v. City of Taylor*, 268 F. App'x 384, 387–88 (6th Cir. 2008). That kind of "gratuitous force" lasting "beyond the point at which any threat could have been reasonably perceived" violates the Fourth Amendment. *Lawler*, 268 F. App'x at 388. And once someone has been restrained with handcuffs, the need for force is near "nonexistent." *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988); *see also Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607 (6th Cir. 2006); *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).

Kalvitz says he was lying on the ground, not fighting back, when Kinas and Randolph "beat, struck, and kicked" him. And then after they handcuffed Kalvitz, all three officers threw him against a concrete wall and onto the ground. It remains to be seen whether a jury believes his account of the events. But assuming the allegations are true, which we must, no one could dispute that the all three officers violated his constitutional rights.

The officers make a couple of points in response, none with any merit. First, they argue that they were justified in using force against Kalvitz because of their reasonable belief that he posed a danger after brandishing a knife during the fight. Because the Constitution permits officers to exercise reasonable force "in light of the totality of the circumstances," they argue, any force alleged by Kalvitz was necessary to disarm him and stop the altercation. Appellants' Br. at 21 (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).

But that telling of the story relies on facts that appear nowhere in the record. The only evidence that the officers believed Kalvitz brandished a knife is their testimony that they heard about it *after* the altercation ended. The officers cannot rely on information they learned after the fact to justify their earlier conduct. *See Dickerson v. McClellan*, 101 F.3d 1151, 1162–64 (6th Cir. 1996) (denying summary judgment in deadly force case where it was unclear what the officer observed prior to firing his gun). So whether Kalvitz brandished a deadly weapon is immaterial because no one testified that the officers knew about the knife before they attacked him.[1]

Along the same lines, the officers argue that they could use force against Kalvitz because he resisted arrest. This claim fares worse than the first because Kalvitz directly contradicts it in his

---

[1] Even if Kalvitz brandished a knife during the fight, it would not justify the kind of force described in his declaration. Officers cannot continue to strike an individual who has been subdued on the ground. *See Shreve*, 453 F.3d at 686–87. And they certainly cannot use heightened force against that person once they have placed him in handcuffs. *McDowell*, 863 F.2d at 1307. That remains true even if the officers believed he had a deadly weapon before neutralizing him.

affidavit. Kalvitz stated that he did not fight back during the altercation. That ends the inquiry for us here because we do not have jurisdiction to determine whether the officers are entitled to qualified immunity under a different version of the facts. Kalvitz says he did not fight back, and the officers have not provided any evidence to demonstrate that his story is "blatantly contradicted by the record, so that no reasonable jury could believe it." *McDonald*, 814 F.3d at 812 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). For that reason, we need not address whether the officers would have been justified in beating, kicking, and striking Kalvitz if he had resisted.

The officers also argue that Kalvitz does not sufficiently identify which individual defendants took what unlawful action. While they are correct that "[e]ach defendant's liability must be assessed individually," *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008), Kalvitz does more than enough to meet this requirement. He alleges that two officers—Kinas and Randolph—beat, kicked, and struck him. And he alleges that all three officers threw him against a concrete wall and onto the ground. Those allegations satisfy any requirement that Kalvitz particularize the basis of liability for each officer.

Finally, at oral argument the officers' counsel appeared to concede the excessive-force issue in favor of an argument that the officers did not violate Kalvitz's constitutional rights by handcuffing him after the fight or by searching him incident to the seizure. Counsel asked us to analyze this case in a piecemeal fashion, as we sometimes do, by segmenting the allegations into three separate constitutional issues: (1) placing Kalvitz in handcuffs; (2) searching him incident to the seizure; and (3) using excessive force. The first two, counsel argued, were plainly permitted under the Constitution because he was involved in an altercation that the officers needed to stop. Counsel urged the court to at least find qualified immunity for those first two claims.

But the officers waived that argument when they failed to include it in their brief. *See Campbell v. Stamper*, 244 F. App'x 629, 633 (6th Cir. 2007) (citing *United States v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007)). The only qualified-immunity argument in the officers' brief is that they were entitled to use reasonable force to restrain him based on their belief that Kalvitz posed a danger. They included several reasons to justify their conduct, but they never segmented the alleged use of force into different constitutional questions, nor did they ask us to do the same. They did not argue, for example, that handcuffing Kalvitz was justified *even if* kicking, beating, and striking him was not. And they never raised the issue of whether they had the legal right to search his belongings. Those arguments were simply not raised in the brief, and so we decline to address them now.

### B.

The officers also argue that the district court should be reversed because they were off duty that night, not acting as public officials. To prevail on his § 1983 claim, Kalvitz must prove that the officers were acting under color of state law. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001) (citing *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)). As private citizens, they say, they cannot be liable under § 1983.

This issue is unrelated to qualified immunity, so Kalvitz argues that we lack jurisdiction to address it. But we have previously held that, so long as the court has jurisdiction over the qualified-immunity appeal, our pendant jurisdiction extends to issues related to the plaintiff's "*prima facie* § 1983 claim." *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). Because we have jurisdiction over the qualified-immunity issue, we can also review whether the officers were acting under color of state law—an element of the § 1983 claim. *Id.*

That being said, the officers' argument lacks merit. As the district court correctly explained, whether an official's conduct amounts to state action under § 1983 boils down to whether it is "fairly attributable" to the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotation marks omitted). "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359 (citing *West v. Atkins*, 487 U.S. 42, 49–50 (1988)). The critical question is "whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id*. And to answer that question, courts look at multiple factors, including how the officer was dressed, whether he was on duty, whether he displayed his badge, whether he announced himself as an officer, and whether he arrested or attempted to arrest anyone. *See Swiecicki v. Delgado*, 463 F.3d 489, 496 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007); *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005).

Plenty of factual disputes stand in the way of summary judgment for the officers. Kalvitz alleges that Kinas and Randolph announced themselves as officers, took over the situation, handcuffed him, and placed him under arrest. Follmer joined in at some point and helped transport the handcuffed Kalvitz outside. Kalvitz also claims that all three defendants wore holsters and Follmer and Kinas wore their badges. These facts tend to establish that they responded in their official capacity, not as private citizens. *See Swiecicki*, 463 F.3d at 496–97.

Outside of a few conclusory allegations, the officers provide no reason to conclude otherwise. The gist of their argument seems to be that they were not at the Lounge on official business and never "completed a formal arrest of Kalvitz." Appellants' Br. at 15. Yet even the cases the officers cite hold that such formalities do not control the analysis. *See, e.g., Stengel v.*

*Belcher*, 522 F.2d 438, 441 (6th Cir. 1975); *Mooneyhan v. Hawkins*, 129 F.3d 1264, 1997 WL 685423, at *4 (6th Cir. Oct. 29, 1997) (unpublished). If the officers wore their badges, announced themselves as police, and used their handcuffs to restrain and transport Kalvitz, that satisfies the state-action requirement under § 1983. Of course, whether those facts turn out to be true is for the jury to sort out. *See Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980). For now, we can simply affirm the district court's decision and send this question back down for trial.

## IV.

Finding no error in the district court's decision below, we turn to Kalvitz's request for sanctions. He asks us to sanction the officers for filing a frivolous appeal. It's frivolous, Kalvitz argues, because the officers failed to confine their qualified-immunity argument to the facts viewed in a light favoring him.

We have wide discretion to determine whether a party should be sanctioned for filing a frivolous appeal. *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4 (1987). "An appeal is frivolous if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013) (internal quotation marks omitted). Mindful of the unusual circumstance presented by an interlocutory qualified-immunity appeal, we have previously sanctioned defendants who "argued the facts and evidence, in complete disregard of the law." *McDonald*, 814 F.3d at 817. Defendants cannot exploit the right to file an interlocutory appeal solely to delay trial.

We certainly are troubled by the decision-making of appellants' counsel in this case. The officers made only a minimal effort in their brief to discuss the real issue for appeal, which is whether they violated Kalvitz's clearly established rights by beating, kicking, and striking him on the ground and then throwing him into a wall after being handcuffed. And when pressed at oral

argument, counsel retreated and suggested that their position on that issue—the entire basis for filing an interlocutory appeal—might be wrong.

Yet not all poor advocacy should be sanctioned. Counsel for the officers made missteps, but this case stands in contrast with the kind of frivolous appeals we have sanctioned before. Kalvitz points to *McDonald* as an example of a sanctionable qualified-immunity appeal. But *McDonald* differs from this case in a significant way. There, the defendant filed an interlocutory appeal based only on "his own version of the facts and the inferences that he would draw from them." *McDonald*, 814 F.3d at 813–14. We sanctioned the defendants because they "argued the facts and evidence, in complete disregard of the law . . . thus ensuring that they had no chance of success." *Id.* at 817. We cannot say the officers here went that far. They did argue, for example, that "any force *alleged by Kalvitz* was reasonably necessary"—a clear attempt, however misguided, at making the appropriate qualified-immunity argument. Appellants' Br. at 22 (emphasis added). And not to be overlooked, that is precisely the argument we instructed the officers to make when we denied Kalvitz's motion to dismiss. Although they improperly introduced some factual disputes into their brief, they did not—like the defendants in *McDonald*— advance an entirely different version of the facts. That means something, particularly in an appeal where we already rejected a motion to dismiss. So we deny the request for sanctions.

* * *

We affirm the district court's decision and deny the motion for sanctions.